395 P.2d 57

**The OGDEN UNION RAILWAY AND DE-POT COMPANY, Plaintiff,**

**v.**

**STATE TAX COMMISSION of Utah, Defendant.**

**No. 10025.**

Supreme Court of Utah.

Sept. 4, 1964.

Legal Division, Union Pacific Railroad Co., Salt Lake City, for plaintiff.

A. Pratt Kesler, Atty. Gen., F. Burton Howard, Asst. Atty. Gen., Salt Lake City, for defendant.

McDONOUGH, Justice:

This is a proceeding to review a deficiency sales and use tax assessed to plaintiff by the State Tax Commission. The sum in dispute is $33,219.96 in sales taxes and $251.82 in use tax, including penalty and interest, totalling $40,371.13.

The facts of this proceeding are not in dispute. Plaintiff is a subsidiary corporation of the Union Pacific Railroad Company and the Southern Pacific Company, each of which own 50% of the capital stock. Plaintiff has operated the railway depot pursuant to an agreement of the parent companies known as the Ogden Yard Agreement of 1920 to provide services required by the Interstate Commerce Commission of all railroads operating in interstate commerce.

These services are provided on a nonprofit basis to the parent corporations, and are restricted to the parent companies except as the cars of foreign lines are serviced as an accommodation and as required by the Interstate Commerce Commission.

The audit period, from which the deficiency assessment arose, covered a period from 1957 to 1961. The Tax Commission originally assessed a total deficiency of $49,443.72, which was subsequently reduced to the amount of this proceeding upon a stipulation of facts entered into by the parties.

The sales tax deficiency was assessed in two parts: (1) on hay, sand, and straw furnished the parent companies in connection with the cleaning and bedding of stock cars; and (2) on certain services involving repairs, renovations, or installations of tangible personal property, as provided in Sec. 59–15–4(e), U.C.A.1953. The use tax deficiency was assessed against coal purchased in Wyoming and used or consumed by plaintiff in the production of heat at its heating plant in Ogden for the direct operation of revenue equipment belonging to the parent corporations.

The Tax Commission concluded that as a matter of law, plaintiff is responsible for the payment of the use tax on the coal purchased in Wyoming and used for the direct operation of revenue equipment belonging to the parent companies; that plaintiff is a retailer within the meaning of the Utah Sales Tax Act, and denied any refund of any sales taxes heretofore collected and paid by plaintiff; and that under Sec. 59–15–4(e), a sales tax is imposed upon the services listed below, which we deem and hold not taxable or within the contemplation of the legislature under that section.

1. Cleaning of passenger cars, diners and cabooses being a renovation.[1]

2. Testing and checking the heating, lighting and cooling systems in passenger cars and in maintaining the charge in the battery systems in said cars, being a repair.[2]

3. Lubricating cars in transportation train service, being a repair (the oil level is reduced through sustained use).[3]

---

1. Cleaning, in our opinion, simply is "cleaning," as the word commonly is used. Had the legislature intended to include the myriad of menial chores legitimately included in that term it would have added "cleaning" to "repair, renovation and installation."

2. Repairing, in common parlance, is to "repair," or correct *defects* in materials. Merely testing material or recharging a perfectly normal battery is not repairing a defect, in our opinion, nor to which, we believe, the ordinary "do-it-yourselfer" would conclude.

3. The same logic applies here and does not lend itself to the argument that through use, the oil level is lowered. If the oil level is reduced sufficiently to damage the cars, there may be a question of negligence or accident, *after which* the damage may create a defect subject to "repair,"—not before.

4. Stenciling identification on baggage trucks and benches, being an installation.[4]

5. Reclaiming (removal) and coopering (replacing inner doors into freight cars prior to grain shipments) grain doors, being an installation.[5]

6. Cleaning and washing the exterior windows on cabs of diesel units, being a renovation.[6]

7. Cleaning and washing train markers, lamps and lights, being a renovation.[7]

8. Cleaning, sanding, and disinfecting livestock cars, being a renovation.[8]

The Tax Commission further found that under Sec. 59–15–5, U.C.A.1953, plaintiff had the obligation to collect and pay a tax upon the sale of property or service subject to the tax.

Plaintiff's essential argument is that it is not liable for any sales tax on materials and services furnished to the parent corporations because it is not a retailer within the statutory definition found in Sec. 59–15–2 (e), U.C.A.1953. "Retailer" is there defined as "a person doing a regularly organized retail business in tangible personal property known to the public as such and selling to the user or consumer within the State of Utah." Particularly, plaintiff argues it is not a retailer for the following reasons:

1. The phrase "regularly organized business" contemplates buying and selling for profit. Plaintiff emphasizes that there is no profit element involved in transactions between it and the parent corporations. Hence, plaintiff's business is not within the contemplation of Sec. 59–15–2(e).

2. Plaintiff also points out that Sec. 59–15–2(e), U.C.A.1953, requires that the "regularly organized business" must be "known to the public as such." Since all the services performed are done for the exclusive benefit of the parent corporations, and since the general public knows little or nothing about its operations, plaintiff contends that is peculiarly without the scope of the Sales Tax Act.

3. Next, it is argued, that to engage in a "business" within the statutory contemplation, means to *voluntarily* select the endeavor and have complete control over

4. To conclude thus seems to be an abdication from lexicography,—one that any taxpayer would fail to understand.
5. This interpretation, too, is a distortion of common meaning. It is like saying that there is an "installation" to put a 100-lb. block of ice in a car, even though part of it or the water upon melting is removed,—nothing having been added to the car.

6. The glass is identical after the dirt is removed as it was before, unless a washer breaks it, and anyone, it would seem, would be inclined to conclude that the glass was not changed, but only "washed," —a word the legislature must have known about and easily could have employed.
7. There seems to be no difference here in "statutory" or "main street" construction.
8. We can see no difference here.

it. Since plaintiff's operations are limited and confined to meeting the demands and needs of the parent corporations, it is not a business in the statutory sense.

■ First, we must clarify that the sales tax is imposed upon all *sales* of tangible personal property where passage of title and delivery occur within the state of Utah. State Tax Commission of Utah v. Pacific States Cast Iron Pipe Co., 13 Utah 2d 113, 369 P.2d 123, reversed on appeal, 372 U.S. 605, 83 S.Ct. 925, 10 L.Ed.2d 8 (1962). One need not be "retailer" to be taxed. Either retailers or wholesalers are taxed if the sale is to the consumer or user. Passage of title and delivery to the user and consumer are the important requisites of the Sales Tax Act, not whether one is a wholesaler or a retailer. Only those categories of sales specifically exempted by the Act are not taxed.

■ We find unpersuasive the argument that plaintiff does not conduct a statutorily contemplated business because there is no element of profit involved. The Illinois Supreme Court upheld the Tax Commission of that state in levying a sales tax, under a provision very similar to that of Utah, on sales of food by the corporation to its employees on a nonprofit basis. The court found that the legislature intended to tax "the business of selling tangible personal property for use and consumption and not for resale" irrespective of the profit moti-

vation. Continental Can Co., et al. v. Nudelman, 376 Ill. 446, 34 N.E.2d 397, 398 (1941). Other courts have addressed themselves to the problem of profit motivation and have found it sufficient that the transactions confer or are intended to confer a benefit or advantage to the parties involved. That actual profit is made is immaterial. Trico Electric Cooperative v. State Tax Commission, 79 Ariz. 293, 288 P.2d 782 (1955); Bonnar-Vawter, Inc., v. Johnson, 157 Me. 380, 173 A.2d 141 (1961). We think the reasoning of these cases that profit motivation is unimportant, and that all that is required by the statute is that title to tangible personal property pass to the consumer or user within the state is sound and applicable to our statute.

It should be pointed out here that the principal authority relied upon by plaintiff that profit motivation is important in construing the type of business within the scope of Sec. 59–15–2(e) is distinguishable on its facts. In Valier Coal Co. v. Dept. of Revenue, 11 Ill.2d 402, 143 N.E.2d 35, 64 A.L.R.2d 763 (1957), the plaintiff was a subsidiary corporation formed for the purpose of providing coal on a nonprofit basis to the parent corporations, the Burlington and Quincy Railroads, pursuant to an order of the Public Utilities Commission. There the court defined business in the "commercial sense" indispensable to which is the profit element. The Minnesota Supreme Court correctly distinguishes this case as

**28**

not being authority for the nonprofit principle because " * * * the revenue department could not impose a tax on the subsidiary for doing something that it had been prevented from doing by the utilities commission." State v. Minneapolis & St. Louis Ry. Co. (Minn.) 100 N.W.2d 669, 677 (1959).

■ Plaintiff's second contention that because it is not known to the public as a regularly organized business, it is peculiarly not within the scope of the statute defining retailers. We think that this contention is without merit. Many of the large corporations in the United States have subsidiary corporations which, unbeknown to the general public, provide a significant amount of services and material for the parent corporations, and if their public notoriety were the sole test of taxability, many state treasuries would resemble Old Mother Hubbard's Cupboard. Snite v. Dept. of Revenue, 398 Ill. 41, 74 N.E.2d 877 (1947); Bonnar-Vawter, Inc. v. Johnson, supra. It is also noteworthy that the legislature deleted the "known to the public as such" qualification from Sec. 59–15–2(e) in the 1963 amendment.

■ The third argument, that the business is not voluntary since it is limited to serving the parent corporations and is therefore not a retailer, is untenable. Plaintiff again relies upon the Valier Coal case, supra, to prove his point. The element of compulsion, it argues, stems from federal law requiring it to furnish safe, suitable and adequate car service. The legal significance of this contention would be to deprive Utah of a portion of its inherent sovereignty, i. e., the power to tax. If the order had come from a state agency ordering plaintiff to provide nonprofit services, then the Valier Coal argument would be more persuasive. Otherwise, the impact of federal requirements on the operations of plaintiff do not affect Utah's power to tax sales of services and property where title and delivery passes within the state.

We now come to the problem that even if plaintiff is a retailer within the statutory meaning of Sec. 59–15–2(e), do the services performed fall within Sec. 59–15–4(e)? That section reads:

"Excise tax—Rate.—From and after the effective date of this act there is levied and there shall be collected and paid:

"(e) A tax equivalent to two and one-half per cent of the amount paid or charged for all services or repairs or renovations of tangible personal property, or for installation of tangible personal property rendered in connection with other tangible personal property." (Supp.1963)

■ In Barrett Investment Co. v. State Tax Commission, 15 Utah 2d 97, 387 P.2d 998 (1964), we found Sections 59–15–2 and

59–15–4 to be correlative and complementary. Hence there is no argument as to the applicability of the excise tax *if the type of service performed is found to be the kind contemplated by the legislature.* Plaintiff points out that in Chapter 113, Laws of Utah, 1959, the 1953 version of 59–15–4 was amended to include only "Certain Services," and that the services performed by it are not those envisioned by the legislature. The definition of repair, renovation, and installation as used by the Tax Commission (set forth in fact situation) are disputed as not being used in their common and ordinary sense. We agree. Problems of semantics are always difficult, especially where no specific meaning is assigned to them in the statutes, and we are to resolve doubts in favor of the taxpayer.

Section 59–16–3 reads:

"Use Tax. There is levied and imposed an excise tax on the storage, use or other consumption in this state of tangible personal property purchased on or after July 1, 1937, for storage, use or other consumption in this state at the rate of two per cent of the sales price of such property.

"Every person storing, using or otherwise consuming in this state tangible personal property purchased shall be liable for the tax imposed by this act, and the liability shall not be extinguished until the tax has been paid to this state."

The position of this court concerning the use and sales taxes is adequately explained in Barrett Investment Co. v. State Tax Commission, supra. We there held that these taxes are correlative and complementary. "The use tax act was enacted so as to avoid competition and discrimination against purchase of goods subject to the sales tax and the use of similar goods within the state which would not be subject to the sales tax because the transactions involved interstate commerce or because, as in the instant case, the purchasers went outside the state to buy the goods but used them within the state." (Ibid., 999.) The exemptions allowed under the use tax are set forth under Sec. 59–16–4, U.C.A. 1953, and none of which fit plaintiff's situation. We therefore hold that under the construction of the Barrett Investment Co. case, plaintiff is liable for the use tax assessed for coal purchased in Wyoming and used within the state of Utah.

The last point on appeal involves the question of whether payment under protest constitutes payment of the taxes, penalties, and interest, since on appeal plaintiff may recover the whole amount paid. The Tax Commission contends that it does not and that plaintiff is liable for further interest until the appeal becomes final. We cannot agree in this contention. To so hold would penalize a party who chooses to assert his legal right of appeal after having complied fully with the law. Once plaintiff

paid the assessed tax delinquencies, penalties and interest, it has no further liability to the Commission in this regard.

Affirmed. Costs to defendant.

HENRIOD, C. J., and CALLISTER, CROCKETT and WADE, JJ., concur.