**MERRILL BEAN CHEVROLET, INC.,**
**Plaintiff,**

v.

**STATE TAX COMMISSION of Utah,**
**Defendant.**

**No. 14263.**

Supreme Court of Utah.

April 26, 1976.

David E. Bean, of Bean, Bean, Smedley & Starkweather, Layton, for plaintiff.

Vernon B. Romney, Atty. Gen., G. Blaine Davis, Michael L. Deamer, Asst. Attys. Gen., Salt Lake City, for defendant.

MAUGHAN, Justice:

Here for review is a decision of the State Tax Commission sustaining a deficiency assessment for sales tax not paid on automobiles used, by plaintiff, in the demonstration of its stock in trade for the promotion of sales. We reverse.

Plaintiff is a franchised Chevrolet dealer. It is in the business of selling automobiles.

Its procedures for bookkeeping are established by General Motors, and all cars received by plaintiff are entered in the new-car inventory account. Upon determination by plaintiff that a vehicle is to be used as a demonstrator, such vehicle is transferred to the demonstrator account. GMAC provides flooring for all cars, and holds a security interest in them prior to delivery.

When a vehicle is entered in the demonstrator account, GMAC increases the interest one-half of one per cent, and plaintiff must provide collision insurance. The State issues a special title to the dealer for a vehicle used for demonstration; however, upon sale, the title issued to the purchaser is for a new vehicle. The demonstrator account is considered an inventory account, and plaintiff may take no depreciation on these vehicles for income tax

purposes. General Motors strictly limits the number of cars in inventory which may be used as demonstrators, and contrary to the Commission's finding No. 8, a demonstrator may be transferred back to the new-car inventory with a consequent saving to the dealer. A six-month or six-thousand mile warranty, on a demonstrator, is provided by the manufacturer; and if the vehicle should be sold within the limits of the foregoing warranty, the buyer receives a new-car warranty of twelve months, or twelve-thousand miles on that vehicle. The State (Motor Vehicle Division), the federal government, the manufacturer, and the dealer deal with demonstrators as part of the new-car inventory.

When a demonstrator is assigned to a salesman, an agreement is signed; and an agreed price, including sales tax, is paid. Under this agreement, title to the demonstrator does not ultimately pass to the salesman. If the demonstrator is sold within a certain time, the salesman receives an 80 per cent rebate on the price, but no credit on the sales tax is given. Plaintiff keeps on hand more demonstrators than it has salesmen, for the reason that Chevrolet produces many different models and plaintiff attempts to keep sufficient demonstrators available to represent the product. At the time of the hearing, plaintiff had five unassigned demonstrators available.

Sales tax deficiency sustained by the Tax Commission related to the unassigned demonstrators, and to vehicles driven by Mrs. Bean, the wife of the principal owner of plaintiff, and dealer for plaintiff. The unassigned demonstrators were taxed on the basis that plaintiff occasionally loaned the unassigned demonstrators to a service customer, while the customer's vehicle was being repaired.

Loans to customers were described by plaintiff's manager, as a sales technique; he and Mr. Bean alone have authority to make such a loan. The loans are limited to those service customers, when a potential sale is anticipated. The Commission found some demonstrators are sold on this basis. Plaintiff's manager testified the use of the demonstrators is strictly supervised so as to preserve the new-car warranties when the vehicles are sold. There is nothing in the record to indicate the subject vehicles, which were taxed, were not considered new cars.

With reference to the cars driven by Mrs. Bean, Mr. Bean signs a demonstration agreement; but does not pay a fee for the vehicles his wife uses. It is for this reason the Internal Revenue Service requires Mr. Bean to report such use as extra compensation to himself. Mrs. Bean drives from five to eight different demonstrators each year. She has driven as many as three different cars in three weeks; and the longest period of time in which she has driven an automobile is three or four months. The cars driven by Mrs. Bean are frequently those representative of the top of the line. These, salesmen are reluctant to accept, because of the increased cost under the demonstrator agreement.

The testimony of the auditor of the sales tax division was that assessment was made for only one vehicle driven by Mrs. Bean, because it would be unfair to tax all the cars that she had used in one year. He believed the basis for the assessment of the vehicle was the invoice price.

The Tax Commission found the vehicle used by Mrs. Bean was used for demonstration, errand running for the business, and personal use, including civic and community projects. Further, she was found to have caused the sale of these automobiles, although she did not participate in the formalities of closing. Mrs. Bean is not an officer, manager, or saleswoman of plaintiff.

It was the ruling of the Commission that the use of the vehicle by Mrs. Bean was only incidental to any demonstration purposes; that the vehicle was personally consumed, and thus subject to sales tax.

All statutory references are to U.C.A. 1953 as amended. The subject taxes were

assessed pursuant to 59–15–4(a), wherein a tax is levied upon every retail sale of tangible personal property within this State. Under 59–15–2(e) a retail sale includes every sale by the retailer or wholesaler to a user or consumer.

■ If there be a sale to the user or consumer, the transaction is taxed.[1] The sales tax applies to all sales of tangible property made to the ultimate consumer.[2] If property is consumed by the manufacturer as a last user, it is not exempt from sales tax.[3]

It is the theory of the Commission that, when the subject vehicles were withdrawn from the inventory account and used, the sale from Chevrolet to plaintiff became a taxable transaction. With this we cannot agree. Section 59–16–2(b) provides:

> The word "use" means the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include the sale, display, demonstration, or trial of that property in the regular course of business and held for resale.

This exception is set forth in a chapter on use tax, but it is to be noted this court has previously held the sales and use tax acts are complementary to each other, and the exemptions therein should be construed so as to effectuate the same purpose, e. g., if a purchase is exempt under one act, it is exempt under the other.[4]

The Commission has promulgated a regulation, S. 82, interpreting the exceptions set forth in 59–16–2(b). Any such interpretation must conform to the intent of the Act, for any interpretation which is not commensurate with, or is contrary to the express provisions of the Act is beyond the power granted the Commission.[5] The regulation is contrary to the Act.

Relevant provisions of the offending regulation, S. 82, are:

> Demonstration, display and trial (applies to sales and use tax). Tangible personal property purchased by a wholesaler or a retailer and held for display, demonstration or trial in the regular course of his business is not subject to tax. [The offense is the deletion of the term "sale" which is used with "demonstration, display or trial" in the exception set forth in 59–16–2(b).]
>
> . . . Another example of this is an automobile purchased by an auto dealer and assigned to a salesman as a demonstrator. Sales tax applies to any rental charges that might be made to the salesman for use of a demonstrator. . . . Also tax applies to items purchased primarily for company or personal use and only casually used for demonstration purposes. . . . Also automobiles assigned to nonsales personnel such as . . . an officer's wife . . . would be subject to tax even though they may be demonstrated on occasion.

■ To qualify for the exemption under 59–16–2(b), plaintiff's use of the property must be for demonstration of the property in the regular course of business, and held for resale. There is no dispute the subject vehicles were held for resale. The issue is whether they were used for demonstration in the regular course of business.

■ It is the claim of the Commission the vehicle must be used solely for demonstration, to qualify for exemption. Such a position does not comport with the regula-

1. *Ogden Union Railway and Depot Co. v. State Tax Commission*, 16 Utah 2d 23, 395 P.2d 57 (1964).

2. *Olson Construction Co. v. State Tax Commission*, 12 Utah 2d 42, 361 P.2d 1112 (1961).

3. *Union Portland Cement Co. v. State Tax Commission*, 110 Utah 135, 149, 170 P.2d 164 (1946).

4. *Barrett Investment Co. v. State Tax Commission*, 15 Utah 2d 97, 387 P.2d 998 (1964).

5. *Robert H. Hinckley, Inc. v. State Tax Commission*, 17 Utah 2d 70, 404 P.2d 662 (1965).

tion itself; which deems the transaction taxable when the item is purchased primarily for company or personal use, and only casually used for demonstration purposes.

The unassigned demonstrators were found to be used occasionally for "loaner" purposes, which evidently was not deemed a demonstrative use. There was no finding as to the primary use of these demonstrators; nevertheless, the Commission found these vehicles "consumed" and subject to the tax. Whether they are taxable is to be determined by the meaning of the terms "demonstration of the property in the regular course of business."

Where no specific meaning is assigned to a term in a tax statute, this court resolves the doubt in favor of the taxpayer.[6] We have also held taxing statutes, where doubtful, are to be construed strictly, and in favor of the taxpayer.[7]

A cogent statement, in answer of the key question, can be found in *Palmer v. Hoffman:*[8]

. . . But "regular course" of business must find its meaning in the inherent nature of the business in question and in the methods systematically employed for the conduct of the business as a business.

As was noted, plaintiff is a franchised automobile dealer, and as a promotional technique, he operates his motor vehicles on the public thoroughfares to display his wares and to stimulate consumer interest. Since the distribution of these vehicles is limited by the franchise operation, the circulation of the vehicles, in the distribution area, inures to the benefit of the local dealer. The method of restricting the use, so as to preserve the new-car warranty, for the ultimate purchaser, clearly negates the finding that plaintiff was the consumer, or the last user in the transactional chain.

The use of the "loaners" is clearly for demonstration purposes. What more successful sales technique could be employed than to loan a service customer a brand-new automobile, absent all the infirmities of his old car; while waiting through the period of repair, and reflecting on the discomfort of a large repair bill. One cannot gainsay such is in the regular course of business. The uncontradicted testimony was that these loaners were strictly limited to those who were potential buyers, and this determination was made in the sales department.

When a salesman used an unassigned demonstrator, he was required to have the vehicle at the agency during the day. This requirement was monitored by the manufacturer. The use by the salesman must be deemed for purposes of display and demonstration; the fact that he might take the vehicle home in the evening could enhance this purpose rather than detract from it.

The use by Mrs. Bean might at first appear personal, but the rapid turnover in the vehicles she used indicates the purpose of her operation. The testimony shows she participated extensively in community, social, and church affairs; and that she had on occasions personally "sold" her vehicle to the ultimate purchaser. This alleged personal use is, in fact, a sales technique; and as the record shows, an exceedingly successful one. The fact that these cars are held for resale under definitely restricted conditions militates against Mrs. Bean being deemed the ultimate or last user of the "new" automobile. It is interesting to note, the auditor testified it would be unfair to tax all the automobiles Mrs. Bean operated in one year; thus he exercised his judgment and taxed only one. Such testimony is clearly tantamount to an admission of the fact, viz., that Mrs. Bean's use was to demonstrate the vehicles and not to "consume" them.

On a prior occasion, in *Barrett Investment Company v. State Tax Commission,*[9]

6. *Ogden Union Railway & Depot Co. v. State Tax Commission,* supra, note 1.

7. *Pacific Intermountain Express Co. v. State Tax Commission,* 8 Utah 2d 144, 329 P.2d 650 (1958).

8. 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719 (1943).

9. Supra, note 4.

this court observed that the apparent purpose of the legislature in specifying exemptions, where the property was to be resold or transmuted into another kind of property, which would be resold, was to avoid a kind of double taxation. To sustain the assessments in this action would be to countenance the levy of a sales tax, on the same "new" automobile, twice.

ELLETT and TUCKETT, JJ., concur.

HENRIOD, C. J., concurs in the result.

CROCKETT, Justice (concurring, dissenting in part):

I agree with the decision as to the cars owned by the business, which are not assigned or transferred to individual salesmen, but which are used in the business exclusively for the purpose of demonstration and sales. But as to the car used by Mrs. Bean, who is not in any sense an employee of the business, the situation is different. The important fact is that she at all times had one car for her exclusive personal use. The character of such exclusive personal use of the car is not changed because she used it for some community, social and church affairs, the same as many other people use their cars, for various purposes, nor by the fact that the public observed her doing so and may admire the car she drives. The same thing may be said of her fur coat or any other personal possession or accoutrement. . If by this means a car so used can be exempted from paying the taxes thereon, then as to any number of family members, or the relatives, or whomsoever, so using and consuming property in that manner, it can be exempted.

Consistent with its responsibility of seeing that everyone bears his fair share of the tax burden as prescribed by law, the Tax Commission has determined that the car so used by Mrs. Bean comes within the statute imposing the tax on the user or consumer. Section 59–16–2(b), U.C.A. 1953, referring to the use tax defines "use" as the exercise of rights incident to owner-

ship of property, but not to "include the sale, display, demonstration . . . in the regular course of business and held for resale." The Tax Commission's regulation S-82 implements this by providing that the property so exempted must be used *primarily* for that purpose. This is consistent with the statute and with the intent and purpose of the law. The fact appears to be indisputable that the principal use of Mrs. Bean's car is for her private purposes and that any use for display or demonstration in the business is minor and incidental.

The Tax Commission has exercised its prerogative in making its determination. We should not reverse unless its action was capricious and arbitrary. I see no basis for such a conclusion with respect to the imposition of tax on one car used by Mrs. Bean.