**LOCKHEED AIRCRAFT CORPORATION, a corporation, Lockheed Missiles and Space Company, Inc., a corporation, and Lockheed Shipbuilding and Construction Company, a corporation, Plaintiffs,**

v.

**STATE TAX COMMISSION, Defendant.**

**No. 14746.**

Supreme Court of Utah.

July 6, 1977.

---

William H. Adams of Fabian & Clendenin, Salt Lake City, for plaintiffs.

Vernon B. Romney, Atty. Gen., G. Blaine Davis, Stephen R. Randle, Asst. Attys. Gen., Salt Lake City, for defendant.

CROCKETT, Justice:

Lockheed Aircraft Corporation and its subsidiary, Lockheed Missiles, appeal from a decision of the State Tax Commission denying their claim for a refund of taxes and affirming a deficiency assessment.

The gravamen of their appeal is that the Commission was mistaken in ruling that these two companies were not qualified to file a consolidated tax return because they did not constitute an "affiliated group" within the meaning of Sec. 59–13–23, U.C. A.1953, discussed below.

Both Lockheed Aircraft and its subsidiary Lockheed Missiles are California corporations engaged in phases of aircraft manufacture and qualified to do business in Utah. They each file their tax returns on a yearly basis. On March 28, 1972, the Commission granted Lockheed a six month extension of time to file its 1971 return. No such extension was requested by Missiles. On July 25, 1972, the Commission informed Missiles that its 1971 return was delinquent. On August 2, 1972, Missiles advised the Commission it intended to file a consolidated return with Lockheed. On August 10, 1972, the Commission informed the two companies they could not file a consolidated return for the above-mentioned reason. Missiles then filed a separate return for 1971, but with the Commission's consent, reserved its right to file a claim for refund.

Lockheed also filed a separate return for 1971, in which it included Missile's net income of $32,543,143 and subtracted this from Lockheed's net loss of $63,721,181 to produce a net loss of $31,178,038, of which $431,758 was attributable to business done in Utah.

On October 30, 1972, the two companies filed claims for refund which were denied by the Commission. On April 11, 1973, the two companies requested and received six month time extensions for filing their 1972 franchise tax returns. On September 12, 1973, they filed a consolidated return for 1972. On November 21, 1973, the Commission notified both corporations that they were not eligible to file a consolidated return and levied deficiency assessments against them. Pursuant to appropriate proceedings a hearing was held on February 20, 1976, and based thereon the Commission made the decision from which this appeal is taken.

Plaintiffs' contention is that a parent corporation (Lockheed) and only one qualified

subsidiary (Missiles) constitute an affiliated group and that they are entitled to file a consolidated return. They urge that Regulation No. 4 of the Tax Commission to the contrary is invalid. That regulation states:

. . . A consolidated return may not be filed unless the group includes *at least two qualified subsidiaries and a parent corporation.* . . .

We think this is an entirely reasonable interpretation and application of subsection (4) of 59-13-23, U.C.A. 1953, which states:

As used in this section an "affiliated group" *means two or more corporations* connected through stock ownership with a *common parent corporation, if—*

(a) At least ninety-five per cent of the stock of each of the banks and/or *corporations (except the common parent corporation)* is owned directly by one or more of the other banks and/or corporations; and

(b) The common parent corporation owns directly at least ninety-five per cent of the stock of *at least one of the other corporations.*

■ It is further pertinent to observe that the Tax Commission, as any administrative body, must function in conformity with the statutory authority given and may not depart therefrom.[1] On the other hand, if there is any doubt, ambiguity or uncertainty in a statute under which an administrative agency is required to operate, its administrative interpretation should be given considerable weight.[2] But in this instance if the statute is read and understood in accordance with the ordinary meaning of its terms, there is no such uncertainty, but it is plainly talking about a parent corporation with *two or more* subsidiary corporations.

The first paragraph just quoted expressly so states by using the plural, "two or more *corporations* connected . . . with a common *parent corporation.*" That mean-

ing is compounded and emphasized by the succeeding paragraph (a) which also speaks of the subsidiaries in the plural, "each of the banks and/or *corporations.*" It then expressly excepts "except the common *parent corporation.*" Corroborative of our conclusion is the succeeding paragraph (b) which continues to speak of "the common parent corporation" and of the subsidiaries as "the other *corporations*" in the plural.

■ We think the quoted statutory provisions are so clear that they are not susceptible of misunderstanding: that it is speaking of a parent corporation and at least *two subsidiaries,* just as the Tax Commission ruled. It is of course not particularly surprising that the plaintiffs desire to find a way of applying the statute to serve their self interest, and thus permit the parent corporation (Lockheed) and its one subsidiary in Utah (Missiles) to form an affiliated group. But in accordance with what has been said above, it is our opinion that in rejecting that contention the Tax Commission has correctly interpreted and applied the statute. (All emphasis herein added.)

Affirmed. No costs awarded.

ELLETT, C. J., and HALL, J., concur.

MAUGHAN, Justice (dissenting).

Plaintiffs appeal from an order of the Tax Commission denying their claim for a refund of franchise taxes, and affirming an assessment of a deficiency of franchise taxes. We should reverse and remand for further proceedings in accordance with this opinion. All statutory references are to U.C.A. 1953.

Plaintiff, Lockheed Aircraft Corporation, hereinafter identified as Lockheed, has been qualified and doing business in Utah since 1961, and has filed an annual franchise tax return since that time. Plaintiff, Lockheed Missiles and Space Company, Inc., herein-

1. *R. S. McKnight v. State Land Board,* 14 Utah 2d 238, 381 P.2d 726; *Olson Construction Co. v. State Tax Comm'n.,* 12 Utah 2d 42, 361 P.2d 1112.

2. *Colman v. Utah State Land Board,* 17 Utah 2d 14, 403 P.2d 781 (1965); *McKnight v. State Land Board,* 14 Utah 2d 238, 381 P.2d 726 (1963); 4 Davis, Administrative Law Treatise, Section 30.08 at 213–14.

after identified as Missiles, is a wholly-owned subsidiary of Lockheed, which was organized in August 1971. Lockheed was required, as a condition to obtain a loan from the federal government, to transfer to Missiles the assets it had previously used in the conduct of its missiles and space systems business. Missiles was qualified to conduct business in Utah on October 20, 1971. Thereafter, as a corporation, it conducted the missiles and space systems business in Utah; which had previously been conducted by the Missiles division of Lockheed.

The facts are not in dispute. The issues involved concern whether Regulation No. 4, is contrary to the express provisions of Sec. 59-13-23. Lockheed and Missiles, in accordance with Regulation No. 4, were denied the privilege of making consolidated franchise tax returns for the years ending December 1971, 1972, on the ground they failed to constitute an affiliated group. Plaintiffs were also denied the privilege of making a consolidated return for the year ending December 31, 1971, on the additional ground Missiles could not be included in a consolidated return for the first year in which it qualified to do business in Utah.

Regulation No. 4 of the Tax Commission provides:

.  .  .  A consolidated return may not be filed unless the group includes at least two qualified subsidiaries and a parent corporation  .   .   .  .

Based on this regulation the Tax Commission ruled Lockheed (the parent) and Missiles (the subsidiary) did not constitute an affiliated group.

Plaintiffs contend this administrative interpretation of Sec. 59-13-23(4) does not conform with the legal intent of this section; therefore, such an interpretation which is out of harmony and contrary to the express provisions of the section is beyond the powers granted the Tax Commission.[1]

Section 59-13-23(4) provides:

As used in this section an "affiliated group" means two or more corporations connected through stock ownership with a common parent corporation, if—

(a) At least ninety-five per cent of the stock of each of the banks and/or corporations (except the common parent corporation) is owned directly by one or more of the other banks and/or corporations; and

(b) The common parent corporation owns directly at least ninety-five per cent of the stock of at least one of the other corporations. As used in this subsection the term "stock" does not include nonvoting stock which is limited and preferred as to dividends.

Under the express provisions of this statute, may a parent and one subsidiary constitute an affiliated group? We should hold they may.

This subsection in its initial provisions specifies that two or more corporations may qualify as an "affiliated group." The remaining provisions describe the exact relationship which must exist between the two corporations to entitle them to the privilege of filing a consolidated return. First, there must be a connection through stock ownership with a common parent corporation. The effect of subdivisions (a) and (b) is to limit an affiliated group to those entities where at least two of the group sustain a vertical relationship, thus precluding two subsidiaries with a horizontal relationship from constituting an affiliated group. To comply with the statutory provisions the parent corporation or an entity sustaining a vertical relationship with one of the other member corporations must be included in a group where there are two affiliates with only a horizontal relationship. The fact that the parent must be present where it is desired to include two horizontally related subsidiaries in an affiliated group does not preclude under the statute a duly constituted affiliated group consisting of a parent and one subsidiary.

The intent, as expressed in the statute, is to permit a degree of flexibility in the

1. *Robert H. Hinckley, Inc. v. State Tax Commission,* 17 Utah 2d 70, 77, 404 P.2d 662 (1965);

*Merrill Bean Chevrolet, Inc. v. State Tax Commission,* Utah, 549 P.2d 443, 445 (1976).

combinations of related corporations so long as the requisite vertical relationships are sustained in the affiliated group. The purpose of the statute is to permit two or more corporations, which by their relationship may be properly regarded as a unified business entity to file a consolidated return.[2] This purpose is not distorted but fulfilled when a parent and one subsidiary are permitted to file a consolidated return as an affiliated group. This purpose is not subserved by confining the privilege to situations where there are two subsidiaries and a parent. Since the author of the majority conceded in the *Bennett* case the purpose of the statute, there is no rational reason to limit the unitary business concept to three or more corporations.

The author of the majority opinion now perpetuates the error he initially committed in *Bennett Association v. Utah State Tax Commission*.[3] In that case, there was no issue concerning the requisite number of corporations to constitute an affiliated group. Strictly for descriptive purposes, the author stated:

> Plaintiff and its subsidiaries, including Bennett's were members of an "affiliated group," which is defined by Section 59–13–23(4), U.C.A. 1953, as including the parent corporation and each subsidiary (two or more) for which it owns at least 95% of the stock. . . .

This statement was strictly obiter dicta, and since the question was not at issue, there was no investigation into the statutory history and legislative intent concerning the composition of an affiliated group. The author did acknowledge the source of the statute as the 1928 U.S. Internal Revenue Code and that the underlying concept was that affiliated corporations were "properly regarded as a unified business entity."

It is more than a coincidence that in the same year that the *Bennett* case was issued, the defendant Tax Commission changed its long standing regulation, which had been (for 34 years) in harmony with the federal

interpretation, and promulgated Regulation No. 4. Regulation No. 4 reiterates the erroneous dicta of the *Bennett* case.

The precursor of Sec. 59–13–23, U.C.A. 1953, was Chapter 39, Sec. 26(d), Laws of Utah 1931, which provided:

> As used in this section an affiliated group means *one* or more banks or corporations connected through stock ownership with a common parent bank or corporation if, . . . [Emphasis added.]

This statute was adopted from the 1928 Internal Revenue Code, Sec. 141(d) [45 Statutes At Large 831] which provided:

> As used in this section an "affiliated group" meant one or more *chains* of corporations connected through stock ownership with a common parent corporation if—[Emphasis added.]

In 1933, the Revised Statutes of Utah were officially published. The code commission revised the subject statute, and it appeared as Sec. 80–13–24(4). The language therein was identical to Sec. 59–13–23(4), U.C.A. 1953. Thus the terminology "one or more banks or corporations" was changed to "two or more corporations," which, in fact, reflected more accurately the concept expressed in the federal statute, "one or more *chains* of corporations." The legislative intent, as expressed by the revision, appears to be a realignment of the statutory provisions so as to express the identical concepts set forth in the federal statute. The intent of the legislature remained constant, to adopt a statute of the same import as the federal provision. "Two or more corporations" is analogous to "one or more chains of corporations" and the subject statute should be interpreted accordingly. Indeed, it appears clear an additional reason for the change in language was the word "one" is *not* compatible with "affiliated group." "Two or more" is compatible.

---

2. See *Bennett Association v. Utah State Tax Commission*, 19 Utah 2d 108, 111, 426 P.2d 812 (1967).

3. 19 Utah 2d 108, 110, 426 P.2d 812 (1967).

Concededly, plaintiffs fulfill the requirements of subdivisions (a) and (b) of subsection 4. However, the defendant insists that the introductory words of subsection (4) compel one interpretation, viz., there must be two subsidiaries and one parent to constitute an affiliated group.

The dispute concerns the proper interpretation of the following:

. . . an "affiliated group" means two or more corporations connected through stock ownership with a common parent corporation, . . .

Defendant contends that under this provision the parent corporation may not be one of the two required entities to form an "affiliated group," thus there must be a parent and two subsidiaries to fulfill the statutory definition.

The statute must be interpreted in its entirety. The terms had to be sufficiently flexible to cover situations where there could be numerous corporate entities involved. The initial phrase of the introductory provisions established the minimum number as two, the remainder of the provision in generalized terms established the requisite relationship between the two entities, viz., there must be a connection through stock ownership with a common parent corporation. Such a description, particularly in light of the other provisions in the statute, does not exclude the parent as one of the qualifying entities.

Section 59–13–23 was adopted from the 1928 U.S. Internal Revenue Code, Sec. 141 [45 Statutes At Large 831]; therefore, any interpretation of the federal statutes and regulations is helpful.[4]

Section 141(d) provided:

Definition of "affiliated group."—As used in this section an "affiliated group" means one or more chains of corporations connected through stock ownership with a common parent corporation if—

This same basic definition was retained in the 1954 Internal Revenue Code, 26 U.S. C.A., Sec. 1504, wherein it is provided:

(a) Definition of "affiliated group."—As used in this chapter, the term "affiliated group" means one or more chains of includible corporations connected through stock ownership with a common parent corporation which is an includible corporation if—

This provision has been interpreted as follows:

(b) Affiliated group. (1) The term "affiliated group" is defined in section 1504 and includes the common parent corporation and every other corporation for the period during which such corporation is a member of the affiliated group within the meaning of such section.[5]

*Morganton Full Fashioned Hosiery·Co. v. Commissioner of Internal Revenue* [6] is apparently the only case to challenge the administrative interpretation of the term "one or more chains of corporations" as meaning two or more corporations, which may include a parent corporation owning the stock of one subsidiary.

Petitioner-taxpayer urged that under the statutory definition, three corporations, at least, are necessary, on the ground that a chain must necessarily have more than one link.

The court observed that as far as it knew, such a question had never been raised previously. The court discussed the purpose of the statute and stated:

. . . We think under all the circumstances it is only reasonable to construe the meaning of the word "chain" as thus used by Congress to include the parent with the subsidiary. . . .

---

4. *Bennett Association v. Utah State Tax Commission*, note 2 supra.

5. § 1.1502–2, Income Tax Regulations (1961).

6. 14 Tax Court 695, 705–706 (1950).

The legislature when it adopted the federal statute attempted to clarify the ambiguity in the terms "one or more chains of corporations" by forthrightly stating "two or more corporations," thus expressing a legislative intent that a parent and one subsidiary, sustaining the requisite statutory stock relationships would qualify as an affiliated group.[7]

Plaintiffs are correct in their contention the regulation is not in harmony with the express statutory provisions, and, therefore, is beyond the power of defendant.

WILKINS, J., concurs in Justice MAUGHAN'S dissent.

---

**7.** Although it is not determinative of the issue, the Tax Commission concedes that its regulation was in harmony with the federal interpretation until 1967, the new regulation requiring a minimum number of three was promulgated.