STATE of Utah, Plaintiff and Respondent,

v.

Steven R. CHINDGREN, Defendant and Appellant.

No. 880216–CA.

Court of Appeals of Utah.

July 20, 1989.

**528**

Barbara Berrett, Kenneth A. Okazaki (argued), Purser, Overholt & Okazaki, Salt Lake City, for defendant and appellant Chindgren.

Melvin C. Wilson, Davis Co. Atty., Brian Namba (argued), Asst. Co. Atty., Farmington for plaintiff and respondent State of Utah.

Before GARFF, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Steven R. Chindgren appeals from his jury conviction of unlawful taking of protected wildlife, a class B misdemeanor in violation of Utah Code Ann. § 23-13-3 (1984). On appeal, Chindgren claims that section 23-13-3 is not applicable to the facts of this case and is void for vagueness and that the trial court committed several procedural errors. We affirm.

Chindgren is a licensed falconer. On August 12, 1986, he and codefendant, James Hatchett, entered a field in Layton, Utah, with two dogs. Chindgren carried a peregrine falcon which he unhooded and released. The falcon flew around, captured a duck and landed. Chindgren picked up the falcon and grabbed the duck from its mouth. He then ripped off the duck's wing and part of the breast and allowed the falcon to feed on the meat. Two Division of Wildlife Resources officers, who had set up surveillance on the field, observed Chindgren's and Hatchett's activities and cited them for taking protected wildlife out of season under Utah Code Ann. § 23-13-3, a class B misdemeanor.

Prior to trial, Chindgren filed two motions to dismiss, contending that section 23-13-3 was vague and unconstitutional and that the facts of the case did not come within the purview of the statute. The trial court denied both motions, finding that the statute applied and was constitutional.

The prosecution presented its case to the jury and rested on June 8, 1987. Fourteen days later, trial reconvened and defendants presented their case. Hatchett represented himself at trial. During the course of the trial, one juror, Mrs. Rogers, told the court that she had seen a television news story about the case. The trial judge discussed the impact of the story with Mrs. Rogers in chambers with all counsel present. Chindgren's counsel requested that a record be made, but the court's tape recorder failed to provide a recording which could be transcribed. The court clerk's minute entry indicates that Mrs. Rogers expressed sympathy for Chindgren based on the news presentation. The trial judge then interviewed the other jurors who stated that they had not seen or heard anything relating to the case. One juror stated Mrs. Rogers had not related any specific details about the case, while another juror stated she had not heard anything which would affect her decision. The court granted Chindgren's motion to exclude Mrs. Rogers, but denied his motion for a mistrial. The remaining four members of the jury convened and convicted Chindgren of unlawful taking of protected wildlife.

Following the conviction, the trial court denied Chindgren's motion for a new trial, which claimed improper contact between jurors and witnesses.

## APPLICABILITY OF SECTION 23-13-3

We first address Chindgren's contention that section 23-13-3 does not apply to the

facts of this case. We review the trial court's interpretation of a statute as a question of law. *Gonzales v. Morris*, 610 P.2d 1285, 1286 (Utah 1980). In interpreting legislation, we assume that the legislature advisedly adopted each term of a statute and construe statutory provisions to make them harmonious with other statutes relevant to the subject matter. *Stahl v. Utah Transit Auth.*, 618 P.2d 480, 481 (Utah 1980). Further, a statute is to be construed in light of its intended purpose. *Id.* at 482.

Chindgren was convicted of violating Utah Code Ann. § 23–13–3 (1984) which provides:

> It shall be unlawful for any person to *take* any protected wildlife or for any person to permit his dog to take protected wildlife except as provided by this code or the rules and regulations of the Wildlife Board or Board of Big Game Control.

(Emphasis added). The jury was instructed that to find Chindgren guilty of the crime, it had to find, beyond a reasonable doubt:

1. That on or about the 12th day of August, 1986, the Defendant was in the County of Davis, State of Utah; and
2. That the Defendant did, as a party, take, a mallard duck.
3. That the taking was out of season.
4. That the Defendant acted knowingly, intentionally or recklessly.[1]

Chindgren claims that because section 23–13–3 mentions only dogs and not falcons or other animals, the legislature did not intend that a person would be liable for the acts of an animal other than a dog. Thus, he asserts, the jury was erroneously instructed that it could find that Chindgren did, as a party, take, a mallard duck, as a necessary element of the crime charged, even though the taking was by his falcon.

Utah Code Ann. § 23–13–2(34) (1986) states that " '[t]ake' means to hunt, pursue, harass, catch, capture, possess, angle, seine, trap, or kill any protected wildlife or any attempt to commit any of these acts."

Further, Utah Code Ann. § 23–13–2(15) (1987) states that " '[h]unting' means to take or pursue any reptile, amphibian, bird, or mammal by any means." Construing these sections together, we conclude that because "taking" includes hunting and "hunting" includes taking or pursuing any bird by any means, section 23–13–3 prohibits any person from taking protected wildlife out of season by any means.

We then must examine whether "by any means" includes falconry. The Wildlife Board is granted the authority to "authorize the practice of falconry within the State of Utah and the capturing and keeping in possession of birds to be used in the practice of falconry under rules and regulations specified by it." Utah Code Ann. § 23–17–7 (1984). Pursuant to that statutory authority, the Wildlife Board promulgated rules and regulations as set forth in the Proclamation for Raptors, which provides that falconry is "[t]he sport of taking quarry by means of a trained raptor." The Wildlife Board also issued the Proclamation for Taking Waterfowl, which states that ducks may be hunted with a falcon between October 4 and January 11.

Administrative agencies have the power to create rules and regulations which conform to the authorizing statute and do not depart from it. *Lockheed Aircraft Corp. v. State Tax Comm'n*, 566 P.2d 1249, 1251 (Utah 1977); *Crowther v. Nationwide Mut. Ins. Co.*, 762 P.2d 1119, 1122 (Utah Ct.App. 1988).

The Wildlife Board's rules and regulations define falconry and provide that falconry is not permitted out of season, in conformance with section 23–13–3's prohibition against taking protected wildlife out of season. Construing section 23–13–3 in connection with the other relevant statutory provisions and the applicable rules and regulations, we further conclude that the statute declares it unlawful to take or hunt protected wildlife out of season by means of falconry.

---

1. Utah Code Ann. § 76–2–102 (1986) provided that "when the definition of the offense does not specify a culpable mental state and the offense does not involve strict liability, intent, knowledge, or recklessness shall suffice to establish criminal responsibility."

In this case, the State sought to prove that Chindgren had permitted his peregrine falcon to take a duck out of season. In light of our interpretation of the statute, we, therefore, hold that the trial court did not err in concluding that section 23–13–3 applied to the facts of the case and in instructing the jury that to find Chindgren guilty, it had to find, beyond a reasonable doubt that Chindgren did, as a party, take a mallard duck.

## VOID FOR VAGUENESS

■ Chindgren also asserts that section 23–13–3 is void for vagueness, because it fails to provide adequate notice of the prohibited conduct. One may not be held criminally responsible for conduct which he could not reasonably understand to be proscribed. *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954); *Logan City v. Carlsen*, 585 P.2d 449, 450 (Utah 1978).

The statute in this case provides that it is unlawful for any person to take protected wildlife except as permitted by regulations of the Wildlife Board or Board of Big Game Control. In addition, the Proclamation for Taking Waterfowl specifies the hunting season for ducks and the Proclamation for Raptors defines falconry as the sport of taking quarry by means of a trained raptor. Chindgren, who had passed an examination for falconers and was a licensed falconer, could reasonably understand that hunting and capturing ducks out of season with a trained raptor was unlawful. Indeed, the statutory language provides notice to any reasonable person of the prohibited activity. Therefore, we conclude that section 23–13–3 is not void for vagueness.

## SUFFICIENCY OF THE EVIDENCE

We must next determine whether the evidence is sufficient to support Chindgren's conviction of violating section 23–13–3. The standard of review when addressing sufficiency of the evidence to support a jury conviction is as follows:

> [W]e review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.

*State v. Booker*, 709 P.2d 342, 345 (Utah 1985) (quoting *State v. Petree*, 659 P.2d 443, 444 (Utah 1983)). Accordingly, we will set forth the evidence and all inferences which may be drawn from the evidence in the light most favorable to the jury's verdict.

■ Chindgren, Hatchett, and two dogs walked onto farmland at about 7:00 p.m. on August 12, 1986, with Chindgren carrying his four-month-old peregrine falcon. One of the Division of Wildlife Resources officers observed about 1,000 geese and 500 ducks in the ten block area surrounding the field just prior to seeing Chindgren enter the field. Grant Call, the farmer who owned the field, testified that at that time of year ducks and geese habitually come into the freshly harvested grain field from 5:00 or 6:00 at night until about 9:00. A master falconer testified that falcons are trained to kill ducks, and anyone who takes a falcon to a field where there are ducks is hunting. In addition, one witness testified that the day before Chindgren and Hatchett were cited, he saw Chindgren and Hatchett in the same field and observed what looked like a hawk pursue and catch a duck.

On the day of the citation, Chindgren unhooded his falcon and released it into the air. The falcon captured a duck and landed. Chindgren walked over to the falcon, ripped off the duck's wing and some breast meat, and gave it to the falcon. Shortly thereafter two Division of Wildlife Resources officers, who had been watching Chindgren and Hatchett, approached. Chindgren pulled the duck's wing away from the falcon and put it with the remainder of the duck. Chindgren was a master falconer engaged in raising and training falcons.

The evidence supports the conclusion that, at a minimum, Chindgren acted recklessly in releasing a falcon in a field containing an abundance of ducks. Under the circumstances in this case, we find that the evidence is not so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that Chindgren intentionally, knowingly or recklessly took protected wildlife out of season by means of falconry. Therefore, we conclude that the evidence is sufficient to support the jury's verdict.

## PROCEDURAL ERRORS

### A. Two-week Hiatus

■ Chindgren also contends that the trial court committed reversible error in permitting a two-week hiatus between the end of the presentation of the prosecution's case and the beginning of defendant's case. However, because Chindgren failed to object to the two-week hiatus we will not consider the issue for the first time on appeal. *See James v. Preston*, 746 P.2d 799, 801 (Utah Ct.App.1987).

### B. Motion to Sever

■ Chindgren also asserts that the trial court committed reversible error in refusing to grant his motion to sever his trial and that of Hatchett. Utah Code Ann. § 77–35–12(b) (1982) provides that motions to sever shall be raised at least five days prior to trial by written motion. Further, a defendant's right to severance is waived if the motion is not made at least five days before trial. Utah Code Ann. § 77–35–9(d) (1982).

Chindgren's motion for severance was made on the morning of trial and therefore was not timely under section 77–35–12(b). Thus, Chindgren waived his possible right to severance and we need not consider whether the trial court committed reversible error in denying the motion.

### C. Juror/Witness Contact

■ We next consider Chindgren's contention that the trial court committed reversible error in failing to declare a mistrial after one of the jurors stated that she had overheard news broadcasts regarding the trial and in failing to properly preserve a record of the proceeding regarding the juror's media exposure. Because the juror was excused from duty after revealing her media exposure and there was no evidence she tainted deliberations of the remaining jurors, we find it unnecessary to address these issues.

### D. Motion for New Trial

■ Finally, we must determine whether the trial court erred in failing to grant a new trial due to the jury's interaction with a witness. In *State v. Erickson*, 749 P.2d 620, 621 (Utah 1987), the Utah Supreme Court stated that "prejudice will be presumed from any contact between witnesses, attorneys, or court personnel and jurors that goes beyond a mere incidental, unintended contact." In *Erickson*, the court reversed a conviction where a four- or five-minute conversation took place between a juror and a key witness for the state in which personal matters and the witness's job were discussed.

In this case, unlike *Erickson*, the only indication that a conversation occurred is the statement in Chindgren's motion for a new trial that "the jury commingled with the witnesses for the prosecution, including but not limited to the expert witness, Martin Tyner, in the hall prior to the trial and during breaks in the trial and overheard conversations and discussions regarding the trial and issues at trial." The record is devoid of any evidence presented to the trial court that the conversations occurred or the extent or substance of the alleged conversations. Therefore, because we have no record regarding the contact, we cannot consider the issue of whether the trial court erred in failing to order a new trial.

Affirmed.

GARFF and JACKSON, JJ., concur.