399 P.2d 145

The OGDEN UNION RAILWAY AND
DEPOT COMPANY, Plaintiff,

v.

STATE TAX COMMISSION of Utah,
Defendant.

No. 10025.

Supreme Court of Utah.

Feb. 16, 1965.

Bryan P. Leverich, Scott M. Matheson, Salt Lake City, for plaintiff.

Phil L. Hansen, Atty. Gen., F. Burton Howard, Asst. Atty. Gen., Salt Lake City, for defendant.

CROCKETT, Justice.

Rehearing was granted to reconsider only one issue dealt with in our previous decision, which reviewed an order of the Tax Commission assessing deficiency sales and use taxes against the plaintiff. 16 Utah 2d 23, 395 P.2d 57 (1964).

The plaintiff corporation, owned jointly by the Union Pacific Railroad Co. and Southern Pacific Co. furnishes them depot facilities and related services in Ogden.

In the former opinion we held (1) that a number of the activities carried on by the plaintiff for its parent companies, such as cleaning, lubricating and other services refurbishing railroad equipment, were not subject to sales tax because they did not come within the words "repair, renovation and installation" as used in Sec. 59–15–4(e), U.C.A.1953; (2) that plaintiff is not exempt from sales tax on all the depot services it renders for its parent companies, since many of such services involve passage of title to personal property and delivery to the user and consumer as provided in Sec. 59–15–4 of the Sales Tax Act; and (3), that the plaintiff is responsible for the payment of the use tax on coal purchased in Wyoming and used in providing such services.

On this rehearing no question is raised concerning (1) and (2) above. As to (3) plaintiff contends that this court incorrectly ruled that the coal it uses is subject to tax on the ground that there is no exemption for it included in the exemptions under the Use Tax Act. Sec. 59–16–4, U.C.A. 1953. It argues that this limiting of exemptions to those stated in the Use Tax Act is in error and does not apply the tax as intended by the legislature; and further that inasmuch as "coal, fuel oil and other fuels", which are used by large industrial users, are all treated alike under the statute the opinion may have extensive detrimental effects. Plaintiff's position is that the property question is whether such property is exempt under the Sales Tax Act (Sec. 59–15–4, U.C.A.1953); and that any property exempt under the Sales Tax Act should also be exempt from the use tax. We agree with this contention. Since the above apprehension exists and also since our prior opinion might be interpreted as indicating that certain transactions would be subject to use tax because not expressly exempted by that act, whereas, the same transactions, if they occurred within the state, would be exempt under the Sales Tax Act, we granted the rehearing to correct any uncertainty that exists in that regard.

In reference to this problem, it is appropriate to consider the background and the relationship of the two acts. The sales tax was enacted in 1933, imposing a tax on all sales of personal property within the state. See Title 59, Chap. 15, U.C.A. 1953. After several years' experience under this act, it was found that in numerous instances, items of personal property, particularly expensive things such as automobiles and farm machinery, were purchased outside the state to avoid the Utah sales tax. It was to get rid of this tax evasion, to prevent loss of business to Utah merchants in border areas, and to tax uniformly all personal property when it was first put to use in this state, whether purchased in Utah or elsewhere, that the Use Tax Act was passed in 1937. See Title 59, Chap. 16, U.C.A.1953. It would seem anomalous if a commodity

were exempted by the Sales Tax Act, and thus not being subject to that tax, would then be caught by the use tax. Because these two acts are closely related and complementary to each other, it seems both logical and fair that exemptions under the Sales Tax Act should also apply under the Use Tax Act. We have heretofore recognized this principle. Barrett Investment Co. v. State Tax Comm'n, 15 Utah 2d 97, 387 P.2d 998 (1964); Geneva Steel Co. v. State Tax Comm'n, 116 Utah 170, 209 P.2d 208, 210 (1949); Union Portland Cement Co. v. State Tax Comm'n, 110 Utah 152, 176 P.2d 879, 881 (1947).

We revert to consider the specific commodity here in question: the coal plaintiff purchases in Wyoming and uses in carrying on its activities in its depot business in Ogden. The use tax is imposed in broad language. Sec. 59–16–3, U.C.A.1953 provides:

"There is levied and imposed an excise tax on the storage, use or other consumption in this state of tangible personal *property purchased for storage, use or other consumption* in this state * * *.

"Every person *storing, using or otherwise consuming* in this state tangible personal property purchased shall be liable for the tax imposed by this act * * *."

Plaintiff does not question that the coal it uses comes within the terms of the above tax statute. The position taken is that it would be exempt under the provision of the Sales Tax Act, Sec. 59–15–4, U.C.A.1953, which recites that:

"The sale of coal, fuel oil and other fuels shall not be subject to the tax *except as hereinafter* provided."

But the "except as hereinafter provided" is that the tax specifically applies to: " * * * gas, electricity, heat, *coal,* fuel oil or other fuels sold or furnished *for domestic* or *commercial* consumption."

■ The pivotal question then is whether the plaintiff uses coal for a "commercial" use, as found by the Commission, or for an "industrial" use, as contended by the plaintiff. The differentiation between these uses involves niceties in the determination and application of facts which the administrative body, because of its advantaged position and of its expertise in the field is better equipped to deal with than is this court. Wisconsin Electric Power Co. v. United States, 336 U.S. 176, 181, 69 S.Ct. 492, 93 L.Ed. 591 (1948). And because of these factors, its decision should be indulged some credit and not disturbed lightly. McKnight v. State Land Board, 14 Utah 2d 238, 381 P.2d 726, 731 (1963).

■ A careful consideration of the entire sales tax statute, Sec. 59–15–4, U.C.A. 1953, tends to support the Commission's conclusion. The same statute which provides for the tax on coal sold or furnished for

"commercial" consumption (Sec. 59–15–4 (b) (2)) by its other subdivisions, (b), (d), (e), (f), and (g) also expressly taxes a wide gamut of other services such as transportation, amusements, hotels, motels, cafes and laundries, all of which are properly classified as "commercial" and includes with them "common carrier" operations. Subsection (e) imposes a sales tax on:

" * * * all services for repairs or renovations of tangible personal property, or for installation of tangible personal property rendered in connection with other tangible personal property."

Apart from specific activities which we held in the prior decision not to amount to "repair, renovation, or installation," the record amply supports the Commission's finding that plaintiff's business consists generally in rendering services to its parent common carrier companies, and that its use of coal was for a commercial purpose. That being so, and because under the Commission's findings the coal plaintiff uses does not qualify as exempt under the Sales Tax Act, the order of the Tax Commission is not disturbed in that regard. But the decision is modified as indicated herein, to the effect that exemptions under the Sales Tax Act also apply to the Use Tax Act. (All emphasis added)

No costs allowed.

HENRIOD, C. J., and McDONOUGH, WADE, and CALLISTER, JJ., concur.