SF PHOSPHATES LIMITED
COMPANY, Petitioner,

v.

AUDITING DIVISION, UTAH STATE
TAX COMMISSION, Respondent.

No. 970239.

Supreme Court of Utah.

June 26, 1998.

William H. Adams, Salt Lake City, for petitioner.

Jan Graham, Attorney General, Clark L. Snelson, Assistant Attorney General, Salt Lake City, for respondent.

DURHAM, Associate Chief Justice:

SF Phosphates Limited Company ("Phosphates") seeks review of a Tax Commission order assessing a sales tax deficiency against it on the transfer of electricity to its 98 percent-owned subsidiary, SF Pipeline Limited Company ("Pipeline"). The Tax Commission found that electricity provided by Phosphates to Pipeline was not electricity used in mining and was therefore subject to sales tax. We affirm.

The parties stipulated before the Commission to the following facts. Phosphates owns and operates a phosphate mine in Vernal, Utah, from which it transports ore to its fertilizer plant in Rock Springs, Wyoming via a pipeline owned and operated by Pipeline, a common carrier. Phosphates owns 98 percent of Pipeline, but the two are separately incorporated. Phosphates furnishes Pipeline with the electricity used to operate the pipeline from lines that attach beyond the point at which Utah Power meters electricity to Phosphates. Pipeline pays Phosphates for the electricity it uses at the same rate Utah Power sells electricity to Phosphates. Phosphates has not paid sales tax on the transfer of electricity to Pipeline, claiming that all electricity shown on its meter is used in mining and is therefore exempt from sales tax.

The Tax Commission audited Phosphates and assessed sales tax for the period of April, 1992 through December, 1994 on the electricity Phosphates furnished to Pipeline. Phosphates petitioned for redetermination. After a formal hearing, the Tax Commission concluded that the electricity sold by Phosphates to Pipeline is subject to sales tax because Pipeline is a common carrier in the business of transportation, a commercial activity, and therefore section 59–12–103(1)(c) of the Utah Code requires Phosphates to collect sales tax.

This case involves the interpretation of statutes defining transactions to which sales tax applies and of Tax Commission rules. The Tax Commission's construction of the statute presents a question of law, which we review for correctness. *See Visitor Info. Ctr. Auth. v. Customer Serv. Div.*, 930 P.2d 1196, 1197 (Utah 1997). Respecting interpretation of its own rule, we will uphold the Commission so long as the interpretation is rational and reasonable. *Thorup Bros. Constr. Inc. v. Auditing Div.*, 860 P.2d 324, 327 (Utah 1993).

Phosphates argues first that the electricity it provided to Pipeline for the transportation of ore was for use in mining, a noncommercial activity not subject to sales

tax under section 59–12–103(1)(c), rather than electricity used for transporting property, a commercial activity subject to sales tax by that same statute.[1] Whether an activity is commercial or not "involves niceties in the determination and application of facts which the administrative body, because of its advantaged position and of its expertise in the field, is better equipped to deal with than this court." *Ogden Union Ry. and Depot Co. v. State Tax Comm'n*, 16 Utah 2d 255, 257, 399 P.2d 145, 146 (1965) (distinguishing "commercial" and "industrial" activities for purposes of sales tax). Section 59–12–103(1)(c) provides that a sales tax is levied on "gas, electricity, heat, coal, fuel oil, or other fuels sold or furnished for commercial consumption."[2] Utah Code Ann. § 59–12–103(1)(c). Commercial consumption includes "transportation of property by land." *Id.* at § 59–12–102(1)(b). Pipeline is a common carrier, and as such it "undertakes for compensation to transport persons or property." *Public Utils. Comm'n v. Nelson*, 65 Utah 457, 461, 238 P. 237, 239 (1925). Thus, as the Commission concluded, the Sales and Use Tax Act specifically provides for the payment of sales tax on electricity sold to a common carrier, and the transfer of electricity by Phosphates to Pipeline is subject to sales tax. Moreover, Phosphates cannot rely upon any statutory exemption. Section 59–12–104 enumerates exemptions from sales and use tax; no listed exemption applies to the transaction between Phosphates and Pipeline. *See* Utah Code Ann. § 59–12–104.

Phosphates relies upon Tax Commission rule 865–19–35S for its claimed exemption. That rule defines "noncommercial consumption" as "fuel used in: mining or extraction of minerals." Utah Admin. Code R865–19–35S(B)(1)(1994). Phosphates argues that the electricity provided to Pipeline for the transportation of ore is fuel used in mining, an exempt noncommercial activity. *Id.* However, the rule must be construed in a manner consistent with the statute, which specifically includes transportation in the definition of commercial activity. *See Sanders Brine Shrimp v. Audit Div.*, 846 P.2d 1304, 1306 (Utah 1993) (stating that statutes and commission rules must be construed consistently). A Commission rule cannot broaden the exemptions provided in a statute. *Rocky Mountain Energy v. State Tax Comm'n*, 852 P.2d 284, 287 (Utah 1993). "Rules are subordinate to statutes and cannot confer greater rights or disabilities." *Id.* Harmonious construction of the rule with the statute dictates that the rule's definition, which includes mining as noncommercial activity, cannot encompass transportation of ore because transportation of ore is specifically included in the statutory definition of commercial activity.

"Furthermore, while courts should generally construe taxing statutes favorably to the taxpayer and strictly against the taxing authority, 'the reverse is true of exemptions.'" *Union Pacific R.R. v. Auditing Div.*, 842 P.2d 876, 880 (Utah 1992) (quoting *Parson Asphalt Prods., Inc. v. State Tax Comm'n*, 617 P.2d 397, 398 (Utah 1980)). The sales tax exemption for fuels supplied for mining must be narrowly construed, and therefore we uphold the Commission's assessed sales tax deficiency against Phosphates.

Phosphates argues that the term "mining" must have one definition for all tax-related purposes and urges us to adopt the broad definitions of the term contained in Utah Code Ann. §§ 59–2–102(15) and –5–201(3). We decline to do so. The tax code itself assigns different meanings to the term "mining" for different types of taxes. *Compare* Utah Code Ann. § 59–2–102(15) (1992) (defining mining for purposes of the Property Tax Act) *with* Utah Code Ann. § 59–5–201(3) (1992) (defining mining for purposes of the Severance Tax Act). Moreover, neither of the aforementioned broad definitions of mining relate to an exemption. Rather, they

---

1. Unless otherwise indicated, all statutory references are to the 1992 code sections in effect during the audit period April 1992 through December 1994.

2. In its reply brief, Phosphates argues that it cannot sell or furnish electricity to Pipeline be-

cause doing so would bring Phosphates within the definition of a public utility. *See* Utah Code Ann. §§ 54–2–1(6) & (14). Other than mentioning the statutory definitions, Phosphates fails to provide any support for its contention that "furnishing" has the same meaning in the Sales Tax Act as it does for the regulation of public utilities.

define mining for the purposes of imposing a tax.

■ Phosphates maintains next that even if the electricity it transfers to Pipeline is not used in a sales tax-exempt activity, the Tax Commission's "predominant use rule" applies to exempt the transaction from sales tax. Rule 865–19–35S provides that when "a firm has activities which are commercial and non-commercial and all fuels are furnished at given locations through single meters, the predominant use of the fuels shall determine taxable status of the fuels." Utah Admin. Code R865–19–35S(E) (1994). Phosphates contends that since all the electricity supplied by Utah Power comes through one meter and Phosphates uses 78 percent of the electricity in exempt mining activity, the predominant use rule applies to exempt sales tax on all electricity supplied through that meter, including the electricity Phosphate supplies to Pipeline.

The Commission maintains that the predominant use rule does not apply because the electricity is not supplied through a "single meter." It contends that because Pipeline owns a meter at its pumping station that measures the electricity supplied by Phosphates, the electricity is not supplied through a "single meter" and the rule is inapplicable. This argument is not persuasive. First, the Commission specifically found that Utah Power supplied electricity to Phosphates through a single meter. Furthermore, the statutory definition of "meter" supports Phosphates' interpretation that Utah Power supplied electricity through a single "meter." *See* Utah Admin. Code R746–310–1B.7 (defining meter as the "device used to measure the electricity transmitted from an electric utility to a customer").

Although not specifically mentioned in its decision, the Commission appears to have relied on the fact that Phosphates and Pipeline are distinct legal entities (one a mining operation, the other a common carrier) in concluding that the two do not constitute a "firm" within the meaning of Rule 865–19–35S, thus precluding the applicability of the predominant use rule. A firm is " 'a business unit or enterprise,' an 'unincorporated business' or a 'partnership of two or more per-

sons.' " *Barton v. Industrial Comm'n*, 723 P.2d 392, 393 (Utah 1986) (quoting *Black's Law Dictionary* 578 (5th ed.1979)). The Commission's conclusion that the definition of "firm" is limited to a single legal entity is "reasonable" and we will uphold it. *See Thorup Bros. Constr.*, 860 P.2d at 327.

■ Phosphates argues for broader interpretation of the rule. A broader interpretation of the rule, however, could lead to abuse, allowing loosely-related organizations to take advantage of the rule to avoid paying sales tax on the transfer of electricity for commercial activities. Additionally, we note that Phosphates' ownership of Pipeline does not exempt Phosphates from paying sales tax on transactions between the two. Having elected separate corporate forms, Phosphates and Pipeline are bound by the obligations and benefits of those forms. *See Institutional Laundry Inc. v. State Tax Comm'n*, 706 P.2d 1066, 1067 (Utah 1985); *see also Salt Lake Brewing Co. v. Auditing Div.*, 945 P.2d 691, 695 (Utah 1997) ("[C]lear legal and economic segregation of the activities of the different establishments would give rise to a different [tax] result."). Historically, we have recognized separate corporate forms and imposed sales tax liability on transactions between a parent company and its wholly or partially owned subsidiaries. *See, e.g., Hales Sand & Gravel, Inc. v. Audit Div.*, 842 P.2d 887, 894–95 (Utah 1992) (holding parent company not entitled to refund of sales tax paid on transactions with subsidiary); *Institutional Laundry, Inc.*, 706 P.2d at 1067 (holding wholly-owned subsidiary liable for sales tax on transaction with parent); *Ogden Union Ry. and Depot Co. v. State Tax Comm'n*, 16 Utah 2d 23, 28–29, 395 P.2d 57, 60 (1964)(holding a subsidiary liable for sales tax on transaction with parent) *modified in part*, 16 Utah 2d 255, 399 P.2d 145 (1965). Thus, we uphold the Commission's interpretation of its rule, which precludes treating Phosphates and Pipeline as a "firm" within the meaning of the predominant use rule.

The judgment of the Tax Commission is affirmed.

388

HOWE, C.J., and STEWART, ZIMMERMAN and RUSSON, JJ., concur in Associate Chief Justice DURHAM's opinion.