2001 UT App 9

**Robert BRADLEY, Joyce Bradley, R. Dale Whitelock, Karma Whitelock, Louis Peterson, and Barbara Peterson, Plaintiffs and Appellees,**

v.

**PAYSON CITY CORPORATION, Defendant and Appellant.**

No. 990329–CA.

Court of Appeals of Utah.

Jan. 11, 2001.

UTAHS's medical director.

Jody K. Burnett, Williams & Hunt, Salt Lake City, and David C. Tuckett, Payson, for Appellant.

Mark E. Arnold, Scott L. Wiggins, and Diana L. Garrett, Arnold & Wiggins, PC, Salt Lake City, for Appellees.

Before GREENWOOD, P.J., JACKSON, and THORNE, JJ.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Payson City appeals the trial court's reversal of the City Council's decision denying plaintiffs' request to change the zoning of their property. The trial court determined the City Council's decision was arbitrary and capricious because it was not supported by any evidence other than public opinion. We reverse.

## BACKGROUND

¶ 2 This appeal involves property in Payson City, Utah, zoned for the most part R–1–A, which is a low density residential agricultural zoning with minimum lot size of one acre. The property is located west of Inter-state Highway 15 and is abutted on four sides by property zoned for industrial use. The General Plan for Payson City identifies mostly residential land use east of I–15 and industrial and agricultural property west of I–15. Plaintiffs, however, note that some of the property west of I–15 is now zoned for residential housing and that the Payson Planning Zone Map anticipates large areas zoned for residential use west of I–15. Furthermore, the General Plan encourages a mixture of residential densities, including low, medium, and high density housing.[1]

¶ 3 In January 1999, David S. White, on behalf of several landowners, applied to Payson City to have property changed from R–1–A to R–2–75, high density multifamily residential zoning (the White application). The Planning Commission held a public hearing on March 20, 1996 to receive public comment on the proposal. Prior to the public hearing, thirty-eight property owners in the area of the proposed change presented the Planning Commission a signed petition opposing the change. During the hearing, the Commission heard public comment both for and against the zoning change. Specifically, thirteen individuals spoke in opposition to the White application while five spoke in favor of the change—four of these proponents had an interest in the subject property. Public opposition included concerns over maintaining the agricultural nature of the area, including using the land for large animals, and also concerns over infrastructure. The Planning Commission ultimately recommended that the City Council deny the White application.

¶ 4 Following the Planning Commission meeting on March 20, the City Council met and heard public comment. During this public hearing, the Council heard concerns similar to those raised before the Planning Commission, and also heard concerns about traffic in the area if the zoning change was approved. Advocates of the application expressed the need the area had for low income housing. Based upon the General

---

1. At oral argument, the parties disputed whether the General Plan had been properly adopted. Plaintiffs argued the plan had never been properly adopted by Payson City. The record, however, does not show that plaintiffs ever objected to the General Plan prior to appeal, and, in fact, they cite to the General Plan in their brief to support their argument that a mixture of residential densities is encouraged. Whether or not the General Plan was properly adopted does not affect our disposition of this case.

Plan, traffic concerns, and the Planning Commission's recommendation, the City Council voted to deny the White application.

¶ 5 In addition to the White application, another property owner, Louis Peterson, a plaintiff in this action, filed a zoning change application on March 8, 1996, requesting that his and other's property be changed from R–1–A to R–1–9, medium density residential (the Peterson application). The Peterson application stated that the one acre minimum lot size was too large for the owner's needs.

¶ 6 A public hearing on the Peterson application was held on May 22, 1996. During this hearing, some of the neighboring businesses expressed concern that the existing industrial use of neighboring property would be incompatible with a change to higher density residential zoning. Specifically, Associated Foods, which runs a warehouse in the area, feared that new residents would seek action to prevent its trucks from operating twenty-four hours a day. Another business expressed concerns that residents would object to the noise and smell from its packing facility. Subsequently, the City Council denied the Peterson application.

¶ 7 Plaintiffs commenced this action in district court on April 7, 1997, claiming that Payson City had wrongfully denied their re-zoning requests. During a hearing on the parties' cross motions for summary judgment, the trial court expressed concern that the record did not contain any basis for the City Council's decision to deny the applications. The trial court requested that Payson City prepare findings setting forth the reasons for its denial. The City prepared written findings which detailed the public comment received during the public hearings. The trial court issued a Memorandum Decision and Order reversing the City Council's decision, determining that the Council had

acted arbitrarily and capriciously because its decision had no evidentiary support other than public opposition. Payson City appeals.

## MOTION FOR CERTIFICATION AND APPELLATE JURISDICTION

¶ 8 As a preliminary matter, we address plaintiffs' motion to certify this case to the supreme court. Payson City initially appealed directly to the supreme court. In its docketing statement, Payson City stated that the supreme court had original appellate jurisdiction to hear the appeal under Utah Code Ann. § 78–2–2(3)(j) (1999).[2] By its own motion, the supreme court transferred the case to this court pursuant to Rule 44 of the Utah Rules of Appellate Procedure. The supreme court stated that it was transferring the case because the appeal was "taken from an order, judgement or decree of a court in a case that is not within the original appellate jurisdiction of the Utah Supreme Court."

¶ 9 Based on the parties' comments at oral argument and our own actions in a similar case,[3] apparently some confusion exists over which court has original appellate jurisdiction over a district court's review of a city council's decisions on zoning issues. As counsel for Payson City noted at oral argument, none of the provisions of Utah Code Ann. § 78–2a–3 (1996), the statutory description of the court of appeals' jurisdiction, specifically assign this court original appellate jurisdiction over cases of this nature. The supreme court, however, seems to have consistently determined that it does not have original appellate jurisdiction over zoning cases under the catch-all provision found in section 78–2–2(3)(j). Accordingly, this court must have jurisdiction. Examining section 78–2a–3, the only provision that could apply is subsection (2)(b)(i) which gives this court jurisdiction over "appeals from the district court review

---

2. Section 78–2–2(3)(j) provides: "The Supreme Court has appellate jurisdiction, including jurisdiction of interlocutory appeals, over orders, judgments, and decrees of any court of record over which the Court of Appeals does not have original appellate jurisdiction...." Utah Code Ann. § 78–2–2(3)(j) (1996).

3. In *Splendor Valley v. Summit County,* Case No. 20000277–CA, a case currently pending before us, appellants initially filed their appeal in our

court, and we transferred the appeal to the supreme court, believing the supreme court had original appellate jurisdiction pursuant to Utah Code Ann. § 78–2–2(3)(j) (1996). The supreme court, however, transferred the case back to us stating it lacked original appellate jurisdiction, but did not refer in the order to a particular statutory provision that conferred this court with original appellate jurisdiction over the case.

of adjudicative proceedings of agencies of political subdivisions of the state or other local agencies...." Utah Code Ann. § 78–2a–3(2)(b)(i) (1996). As Payson City's counsel noted, however, this case does not arise from an "adjudicative" proceeding, but rather a legislative proceeding. Nevertheless, in order to effectuate the supreme court's order transferring these appeals to this court, "adjudicative" must be read broadly to include both administrative and legislative proceedings of state political subdivisions and local governments. Thus, read in conjunction with section 78–2–2, governing the supreme court's jurisdiction, section 78–2a–3(2)(b)(i) confers original appellate jurisdiction to this court over this matter.

¶ 10 This case was not transferred to us pursuant to Utah Code Ann. § 78–2–2(4) (1996), sometimes referred to colloquially as a "pour over," but rather was an administrative transfer pursuant to Rule 44 of the Utah Rules of Appellate Procedure, which requires that a timely appeal "pursued in an appellate court that does not have jurisdiction in the case" be transferred to the proper appellate court. In this case, however, we decline to recommend certification. *See* Utah R.App. P. 43 (requiring an "affirmative vote of four judges of the court").

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 11 The initial issue we must determine is the proper standard of review for both the trial court and this court. Applying that standard of review, we must next determine whether the trial court erred in reversing the City Council's decision. These issues present questions of law, which we review for correctness. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

## ANALYSIS

### A. Proper Standard of Review

¶ 12 In this case, the parties vigorously dispute the proper standard of review. Neither party, however, disputes that two recent cases govern the issue. Additionally, neither

party disputes that the Payson City Council's decision was legislative rather than administrative.

¶ 13 In *Springville Citizens for a Better Community v. City of Springville,* 1999 UT 25, 979 P.2d 332, the supreme court reviewed a city's approval of a Planned Unit Development (PUD). In that case, the court applied the substantial evidence standard to the city's decision. *See id.* at ¶ 24. The court determined that the city had acted illegally in approving the PUD because it had failed to follow its own city ordinances. *See id.* at ¶ 30. Importantly, in *Springville Citizens,* the court did not discuss whether it viewed the City of Springville's decision as administrative or legislative. Rather, the court merely stated that a municipality's land use decisions are traditionally afforded great deference, but are arbitrary and capricious when not supported by substantial evidence. *See id.* at ¶¶ 23–24.

¶ 14 Subsequently, this court reviewed Draper City's decision to deny a zoning change application. *See Harmon City v. Draper City,* 2000 UT App 031, ¶ 7, 997 P.2d 321. In *Harmon City,* we reviewed the case law and the statutory history governing the arbitrary and capricious standard as it applied to land use decisions. *See id.* at ¶¶ 8–25. This court concluded that the enactment in 1991 of Utah Code Ann. § 10–9–1001(3) [4] largely codified earlier case law and "did not alter the deferential review of a municipality's legislative zoning classification decisions under the arbitrary and capricious standard." *Id.* at ¶ 14.

■ ¶ 15 Significantly, *Harmon City* interpreted *Springville Citizens* to still differentiate between administrative and legislative proceedings. *See id.* at ¶ 19. This court determined that *Springville Citizens* involved judicial review of an administrative proceeding governed by city ordinances that expressly limited the city's discretion over PUD approvals. *See id.* at ¶¶ 21–23. In contrast, *Harmon City* involved a request to change the city's zoning which is governed

---

4. This statute governs appeals of municipal land use decisions to the district courts. *See* Utah Code Ann. § 10–9–1001 (1999).

only by section 10–9–1001(3). *See id.* at ¶ 21. In other words, this court distinguished *Springville Citizens* because it involved an administrative proceeding which has traditionally been reviewed under the substantial evidence standard, whereas *Harmon City* addressed a legislative proceeding traditionally reviewed under the reasonably debatable standard. *See id.* at ¶ 25. Thus, according to *Harmon City,* the reasonably debatable standard must be applied when reviewing a municipality's legislative decisions. *See id.* Both the substantial evidence and reasonably debatable standards, however, are alternative aspects of the arbitrary and capricious standard of review. *See id.* at ¶¶ 15, 26. Thus, a municipality's decision is always reviewed under the arbitrary and capricious standard; however, under that standard, an administrative proceeding is viewed non-deferentially under the substantial evidence standard, while a legislative proceeding is viewed deferentially under the reasonably debatable standard.

¶ 16 Nevertheless, plaintiffs argue that *Harmon City*'s interpretation of *Springville Citizens* was wrong because the supreme court clearly abandoned the differing standards of review for municipal land use decisions and adopted a "one-size-fits-all" standard, requiring review of all municipal land use decisions under the substantial evidence standard regardless of whether they are administrative or legislative. Thus, according to plaintiffs, we are required by *Springville Citizens* to apply the substantial evidence standard. We disagree.

¶ 17 As we noted, this court has interpreted the supreme court's opinion in *Springville Citizens* to still require that legislative land use decisions of municipalities be reviewed under the reasonably debatable standard. *See id.* Once a panel of this court has decided an issue of law, subsequent panels are bound by the earlier panel's decision. *See State v. Menzies,* 889 P.2d 393, 399 n. 3 (Utah 1994) (stating horizontal stare decisis requires adherence to decisions of prior panels in most instances);[5] *State v. Thurman,* 846 P.2d 1256, 1269 (Utah 1993) (holding "stare decisis has equal application when one panel of a multi-panel appellate court is faced with a prior decision of a different panel"). Thus, despite plaintiffs' urging that we abandon the rule pronounced in *Harmon City* and follow what they view is the clear holding of *Springville Citizens,* " 'we are not at liberty to overrule our prior holding.' " *State v. Ostler,* 2000 UT App 028, ¶ 7, 996 P.2d 1065, (citation omitted), *cert. granted,* 9 P.3d 170 (Utah 2000).[6] Because there is no dispute that the Payson City Council's decision was legislative, we apply the reasonably debatable standard as mandated by *Harmon City.*

### B. Application of the Reasonably Debatable Standard

¶ 18 Although the parties do not dispute what standard the trial court applied, the trial court's Memorandum Decision does not state that it applied the substantial evidence standard. The trial court reversed the City Council's decision because, although the reasons may have been legally sufficient, they were not supported by any factual basis.

5. We recognize that the supreme court has noted that "a panel may overrule its own or another panel's decision where 'the decision is clearly erroneous or conditions have changed so as to render the prior decision inapplicable.' " *State v. Menzies,* 889 P.2d 393, 399 n. 3 (Utah 1994) (citation omitted). However, neither of these exceptions applies in this case because *Harmon City* is not clearly erroneous and circumstances have not changed since it was issued.

6. Contrary to the dissent's assertion, we do not believe that we are disregarding the supreme court's controlling authority in favor of relying on horizontal stare decisis. As we stated in discussing which standard of review should be applied in this case, *Harmon City* interpreted the supreme court's decision in *Springville Citizens* to still allow different standards of review based on whether a municipality is acting administratively or legislatively. Thus, we are not ignoring vertical stare decisis in favor of horizontal stare decisis. Rather, we believe that *Harmon City* followed and interpreted the supreme court's decision in *Springville Citizens* and, as a co-equal panel, we are bound to follow *Harmon City.* We respect our dissenting colleague's argument that *Harmon City* wrongly interprets *Springville Citizens;* however, we do not believe *Harmon City* is clearly erroneous, *see Menzies,* 889 P.2d at 399 n. 3, and therefore, we are required to apply it to this case. Whether *Harmon City* correctly interprets *Springville Citizens* should not be confused with the mandates of horizontal and vertical stare decisis.

The trial court relied on *Davis County v. Clearfield City*, 756 P.2d 704 (Utah Ct.App. 1988) to support its decision. The *Davis County* opinion, however, addresses the denial of a conditional use permit, which is an administrative proceeding reviewed under the substantial evidence standard. *See id.* at 711. In *Davis County*, we held that under the substantial evidence standard, public opinion cannot be the sole basis for denying a conditional use permit. *See id.* Thus, it appears the trial court erred by applying the substantial evidence standard applicable to administrative proceedings, rather than the reasonably debatable standard applicable to legislative decisions. Nevertheless, we could affirm the trial court's ruling if we determined that under the more deferential standard applicable to this case, the city's decision was not reasonably debatable and therefore was arbitrary and capricious, or that the city's decision was illegal because it was either procedurally flawed or inconsistent with a statute. *See State v. Jarman*, 1999 UT App 269, ¶ 5 n. 2, 987 P.2d 1284 (holding we may affirm trial court's ruling on any alternative ground even though that ground or theory was not identified by lower court as basis for its ruling).

■ ¶ 19 Although the trial court ordered Payson City to prepare written findings to support its decision, the record reflects that the trial court did not receive any additional evidence not adduced before the City Council. At oral argument, plaintiffs argued that our review is limited to only the evidence submitted in reference to the White application because the trial court's decision only referenced the White application. The initial appeal to the district court, however, was on behalf of both the White and Peterson applications. When a lower court reviews a municipality's land use decision and takes no additional evidence, "we review the [municipal land use decision] just as if the appeal had come directly from the [municipality]." *Davis County*, 756 P.2d at 710. In other words, we review the trial court's decision de novo, and we are free to consider all the

evidence contained in the record. *See id.* Furthermore, the trial court ordered Payson City to prepare written findings from its public hearings. The evidence which plaintiffs claim is not properly before us is referred to in the findings prepared by Payson City at the trial court's request.[7] Because the trial court relied on these findings to make its decision, we may also review these findings to determine whether the city council acted arbitrarily or capriciously.

■ ¶ 20 Turning to the merits of this appeal, we must review the Payson City Council's decision under the deferential reasonably debatable standard of review. *See Harmon City*, 2000 UT App 031 at ¶ 25, 997 P.2d 321. As noted, this standard is highly deferential to the municipality's decision: "If the [zoning] ordinance and the stated policies and reasons underlying it do, within reason, debatably promote the legitimate goals of increased public health, safety, or general welfare, we must allow [the city's] legislative judgment to control." *Smith Inv. Co. v. Sandy City*, 958 P.2d 245, 253 (Utah Ct.App. 1998) (footnote omitted). Traditionally, courts have granted this high degree of deference due to the political nature of zoning decisions. Unlike administrative proceedings which turn almost exclusively on the evidence presented, zoning decisions require municipalities to weigh competing interests and conflicting concerns to arrive at a decision that serves the general welfare of its residents. *See, e.g., Harmon City*, 2000 UT App 031 at ¶ 18, 997 P.2d 321 (stating "zoning classifications reflect[ ] a legislative policy decision with which courts will not interfere except in the most extreme cases"). Thus, in order to prevail, plaintiffs have the burden of showing that Payson City's decision to continue to use "the property for [low density residential and agricultural] purposes could not promote the general welfare." *Id.* at ¶ 28; *see also Smith Inv. Co.*, 958 P.2d at 252 (holding court will uphold zoning ordinance decision " 'if it is reasonably debatable that it

---

7. At oral argument, plaintiffs' counsel argued that a letter from Associated Foods was not part of record on this appeal because it only pertained to the Peterson application which the trial court did not address. The letter, however, is referred to in the factual findings prepared by Payson City and relied on by the trial court.

is in the interest of the general welfare.'" (citation omitted)).

¶ 21 The Payson City Council stated three reasons for denying the zoning change applications: (1) the zone change would be contrary to the General Plan, (2) the zone change could create traffic problems relating to the existing industrial park, and (3) the Planning Commission recommended the applications be denied. In reversing the City Council's decision, the trial court determined that, although legally sufficient, these reasons were not supported by any factual basis.

¶ 22 The trial court relied on *Davis County* in making its ruling and stated that public opposition alone cannot be the sole basis for denying the zoning change. *See Davis County*, 756 P.2d at 711. Although public opposition cannot be the sole basis for making a land use decision in an administrative proceeding, *see id.*, this case involves a legislative proceeding. As we stated in *Harmon City*, "a city may rely on the concerns of interested citizens when performing legislative functions." *Harmon City*, 2000 UT App 031 at ¶ 26, 997 P.2d 321. Furthermore, we stated that "the public clamor doctrine has no application when a legislative body acts in a legislative capacity." *Id.* at ¶ 27.

¶ 23 In this case, the record reveals that virtually all the material presented to the Planning Commission and to the City Council consisted of public comment both for and against the zoning change and presentation of the General Plan and the Planning Zoning Map. Our review of the record in this case indicates that the City Council properly considered the public comment and came to a reasonable decision based on the information before it. Specifically, two businesses in the area expressed concern over the compatibility of higher density residential areas with their businesses and the neighboring industrial zones. One of the businesses submitted a letter detailing why it located in the area. This business stated it was attracted to the area because the "master plan ... was far sighted enough to separate the industrial area from the residential area by a natural break." The business stated that it operates twenty-four hours a day with "bright dock lights, and large trucks ... [a]ll of which would be a concern for the future residential area that is proposed." Another businessman in the area testified that because his business was contiguous to the proposed zone change he felt he would be out of business within a year because neighboring residents would not tolerate the noise and smell from his fruit processing plant.

¶ 24 As we have previously discussed, "a basic purpose of traditional zoning is '"to minimize conflicts between incompatible uses."'" *Smith Inv. Co.*, 958 P.2d at 254 n. 13 (citation omitted). The potential incompatibility of industrial and residential land uses hardly needs comment. Nevertheless, we explained:

> "The exclusion of places of business from residential districts is not a declaration that such places are nuisances or that they are to be suppressed as such, but it is a part of the general plan by which the city's territory is allotted to different uses, in order to prevent, or at least to reduce, the congestion, disorder, and dangers which often inhere in unregulated municipal development."

*Id.* at 254 (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 391–93, 47 S.Ct. 114, 119–20, 71 L.Ed. 303 (1926)).

¶ 25 Faced with the concerns raised by businesses in the area, the City Council's action was at least reasonably debatable. A city acts well within its mandate when it creates specific areas of industrial and residential zones to prevent incompatible uses from neighboring one another. Plaintiffs did not produce any testimony or other evidence to contradict the public concern that proposed residential zones would conflict with the existing industrial zones.

¶ 26 Additionally, several residents of the area testified that they opposed the change because they wanted to preserve the area for agricultural uses and to raise large animals. These opponents sought to preserve the open agricultural character of the area. Like the businesses that moved to the area in order to operate without conflicting with neighbors, several residents located there in order to keep horses and other large

animals which are not necessarily compatible with medium to high density residential uses. A city can deny a zoning change request if the " 'legislative body has a reasonable basis to believe that it will conserve the values of other properties and encourage the most appropriate use thereof. . . .' " *Id.* at 255 (citation omitted). In this case, several residents testified about the value of the land as low density agricultural land, and the City could properly seek to ·preserve the area for such use.

¶ 27 On the other hand, the City Council also heard from residents who supported the change. Several spoke about the benefits of having more affordable higher density housing in the area. Also, one expert in city planning testified on behalf of the zoning change. Jim Wilbert, who has twenty years of experience in city planning, testified that he had reviewed the proposal and believed it would create affordable housing near the industrial park. Assuming a need for affordable housing exists, this testimony does not necessarily refute the concerns raised by those opposed to the change, nor the City's ultimate decision to deny plaintiffs' rezoning request. Specifically, plaintiffs' expert did not show how the higher density residential areas would be compatible with the neighboring industrial uses, nor that the low density agricultural zoning is contrary to the general welfare.[8]

### CONCLUSION

¶ 28 Under section 78–2a–3(2)(b)(i), we have original appellate jurisdiction over appeals from a district court's review of a municipality's land use decisions. Because the denial of plaintiffs' request to rezone property is a legislative act, the proper standard of review is the reasonably debatable standard

as stated in *Harmon City.* In reversing Payson City's decision to deny plaintiffs' rezoning request, the trial court incorrectly applied the substantial evidence standard. Applying the proper standard to this case, Payson City's denial of plaintiffs' request was reasonably debatable and not arbitrary, capricious, or illegal.

¶ 29 Therefore, we reverse the trial court's decision.

¶ 30 I CONCUR: WILLIAM A. THORNE, Jr., Judge.

JACKSON, Judge (dissenting):

¶ 31 I write separately to express disagreement with the analysis contained in the main opinion. First, I believe this case should be certified to the supreme court. Second, I disagree with the standard of review applied in the opinion and its reliance on horizontal stare decisis.

### Certification

¶ 32 The Bradleys filed a Rule 43 Suggestion for Certification with this court.[1] *See* Utah R.App. P. 43. As discussed further below, in *Springville Citizens for a Better Community v. City of Springville (Springville),* 1999 UT 25, 979 P.2d 332, the Utah Supreme Court unanimously applied a substantial evidence standard of review to a municipality's legislative decision to deny a rezoning application. On the other hand, in *Harmon City, Inc. v. Draper City (Harmon),* 2000 UT App 031, 997 P.2d 321, two judges of this court applied a reasonably debatable standard of review. The Bradleys' suggestion for certification proposed that the existence of this conflict satisfied both prongs of

---

8. In response to our statement in *Harmon City* that we found no decisions reversing a municipality's land use decision under the reasonably debatable standard, *see Harmon City,* 2000 UT App 031 at ¶ 18, 997 P.2d 321, plaintiffs refer us to *Hall v. Korth,* 244 So.2d 766 (Fla.Dist.Ct.App. 1971) and *Kanfer v. Montgomery County Council,* 35 Md.App. 715, 373 A.2d 5 (1977). These cases, however, are distinguishable in that in both cases the plaintiffs sought to have their property rezoned in conformity with the neighboring land. *See Hall,* 244 So.2d at 768; *Kanfer,* 373 A.2d at 6–7. Further, these cases do not involve the

situation where the municipality's decision was supported by public comment in a legislative proceeding.

1. Whether a suggestion for certification is initiated by counsel, a three judge panel, or an individual judge of this court, the suggestion is circulated to the entire court. We will certify a case to the supreme court only if at least four judges of this court vote to do so. *See* Utah R.App. P. 43(a).

Rule 43, which authorizes us to certify two types of cases to the supreme court:

(1) Cases which are of such a nature that it is apparent that the case should be decided by the Supreme Court and that the Supreme Court would probably grant a petition for a writ of certiorari in the case if decided by the Court of Appeals, irrespective of how the Court of Appeals might rule, and

(2) Cases which will govern a number of other cases involving the same legal issue or issues pending in the district courts ... or the Court of Appeals....

Utah R.App. P. 43(c).

¶ 33 Payson City did not file a response to the Bradleys' Suggestion for Certification. At oral argument, counsel for Payson City was asked to respond to the certification issue. He stated that Payson City initiated the appeal in the supreme court because it believed that court had original jurisdiction. Thus, he contended that when the supreme court sent the case to this court, it was a "pourover" and not a "transfer." Rule 43(a) prohibits the court of appeals from certifying back to the supreme court a case which has been poured over from the supreme court's original jurisdiction. However, as the majority opinion points out, the supreme court order clearly "transferred" the case to this court based on our original jurisdiction over the case. Accordingly, Payson City's opposition to certification based on jurisdictional grounds fails.

¶ 34 When pressed further at oral argument, counsel acknowledged that, aside from the jurisdictional question, this case satisfied both criteria for certification set out by rule 43(c). He also agreed that a ruling from the supreme court would be helpful to the courts, counsel, local governments, and private parties. Either criterion provides a sound basis for certification under rule 43.

¶ 35 The majority opinion has given short shrift to the certification issue, stating simply that "we decline to recommend certification," without addressing Rule 43 or analyzing the merits of certification. I agree with counsel that the suggestion for certification fully satisfies the requirements of Rule 43.

¶ 36 First, this case is one that is "of such a nature that it is apparent that the Supreme Court would probably grant a petition for a writ of certiorari in the case if decided by [this court], irrespective of how [this court] might rule...." Utah R.App. P. 43(c)(1). The issue in this case is the standard of review under which a municipality's legislative decision to deny a rezoning application should be reviewed pursuant to a statute originally passed in 1991. See Utah Code Ann. § 10–9–1001(3) (1999) (stating municipality's land use decision "shall" be reviewed only to "determine ... whether or not the decision is arbitrary, capricious, or illegal").

¶ 37 In *Harmon*, we addressed this exact issue. In that case, the majority opinion interpreted "arbitrary, capricious, or illegal," for purposes of legislative decisions, to mean the reasonably debatable standard of review, which is very deferential. *Harmon*, 2000 UT App 031 at ¶¶ 14–17, 997 P.2d 321. *Harmon* retained the same case law standard of review for legislative decisions that was applied before 1991. I dissented, arguing that the recent supreme court case, *Springville*, bound us to apply the less deferential substantial evidence standard of review. The appellant in *Harmon* did not file a petition for certiorari. Thus, the main issue before us escaped supreme court review in that case.

¶ 38 In light of the clear conflict between *Springville* and *Harmon*, it is highly likely that the supreme court would grant a writ of certiorari in this case, no matter how we rule. See Utah R.App. P. 43(c)(1). Indeed, the majority opinion recognizes this conflict between *Springville* and *Harmon*. However, its sole reason for not applying the *Springville* standard is unwarranted devotion to the idea of horizontal stare decisis. As I discuss further below, I believe vertical stare decisis, i.e. our duty to obey the supreme court, trumps our duty to obey the holding of a coequal panel of this court.

¶ 39 Second, both parties to this case agree the resolution of this case "will govern a number of other cases involving the same legal issue or issues pending in the ... courts." Utah R.App. P. 43(c)(2). Thus, the

issue merits a definitive statement by the supreme court.

¶ 40 In sum, this case is a prime candidate for certification under Rule 43. Both parties agree that it is fit for certification and that a ruling from the supreme court is needed.

### Vertical Stare Decisis

¶ 41 At the outset, I want to emphasize that I am not attempting to bring this case within either of the *State v. Menzies*, 889 P.2d 393 (Utah 1994), exceptions to our horizontal stare decisis rule.[2] Instead, I assert this case is outside the mandates of horizontal stare decisis because it is within the mandates of vertical stare decisis. The issue is: which line of authority is superior?

¶ 42 In *Springville*, the supreme court decided this exact issue. *Springville* is the controlling law. The court of appeals is not empowered to adopt a ruling to the contrary. Our duty to obey holdings of the supreme court is without exception. *See Menzies*, 889 P.2d at 399 n. 3 (stating this court must "follow *strictly* the decisions rendered by [the supreme] court" (emphasis added)); *Beltran v. Allan*, 926 P.2d 892, 898 (Utah Ct. App.1996) ("This court is bound to follow controlling decisions of the Utah Supreme Court.").

¶ 43 In *Harmon*, I expressed the reasons why *Springville* should be followed. My reasoning in *Harmon* applies equally to the case

before us. First, the Utah Legislature adopted a statute setting forth "a one-size-fits-all standard of review for 'municipal[ ] land use decisions.'" *Harmon*, 2000 UT App 031 at ¶ 44, 997 P.2d 321 (Jackson, J., dissenting). The statute contains an explicit, mandatory command to the courts: "The courts *shall:* ... determine only whether or not the decision is arbitrary, capricious, or illegal." Utah Code Ann. § 10–9–1001(3)(b) (1999) (emphasis added). In *Springville* "[t]he supreme court took this broad language at face value," ultimately "making the sweeping statement that '[a] municipality's land use decision is arbitrary and capricious if it is not supported by substantial evidence.'" *Harmon*, 2000 UT App 031 at ¶ 45, 997 P.2d 321 (Jackson, J., dissenting) (quoting *Springville*, 979 P.2d 332, 1999 UT 25 at ¶ 24). Moreover, the supreme court actually applied the substantial evidence standard of review in its analysis. *See Springville*, 1999 UT 25 at ¶ 25, 979 P.2d 332 (stating municipality's "decision was not arbitrary or capricious but ... was supported by substantial evidence"). Our supreme court did not attempt to repeal the Legislature's standard of review mandate as the majority has done. Rather, the supreme court followed the Legislature's statutory scheme. Thus, "[t]his court is bound to follow [*Springville*, the] controlling decision[ ] of the Utah Supreme Court," *Beltran*, 926 P.2d at 898, and the statutory command of the Legislature.[3]

---

**2.** The *Menzies* exceptions are (1) a clearly erroneous decision and (2) changed circumstances. *See State v. Menzies*, 889 P.2d 393, 399 n. 3 (Utah 1994). I note that the general orthodox interpretation of stare decisis is subject to two exceptions: (1) urgent reasons and (2) exceptional cases. *See* Blacks Law Dictionary 1414 (7th Ed.1999).

**3.** The Utah Legislature frequently establishes standards of appellate review. For example, the Uniform Administrative Procedures Act (UAPA) sets standards of review for appeals from government agencies. Typically, our courts have given great deference to the Legislature's explicit commands.

Utah appellate courts have meticulously followed the substantial evidence standard of review under Utah Code Ann. § 63–46b–16(4)(g) (1997). *See Brown & Root Indus. Serv. v. Industrial Comm'n*, 947 P.2d 671, 677 (Utah 1997); *Whitear v. Labor Comm'n*, 973 P.2d 982, 984

(Utah Ct.App.1998). Similarly, our courts have respected the restraint imposed by the Legislature in section 63–46b–16(4)(h), requiring an abuse of discretion standard of review when the Legislature expressly or impliedly grants an agency discretion. *See* Utah Code Ann. § 63–46b–(4)(h)(i) through (iv) (1997); *Steiner Corp. v. Auditing Div.*, 1999 UT 53, ¶ 14, 979 P.2d 357, 362 (Utah 1999); *SF Phosphates Ltd. v. Auditing Div.*, 972 P.2d 384, 385 (Utah 1998); *Osman Home Improvement v. Industrial Comm'n*, 958 P.2d 240, 243 (Utah Ct.App.1998).

In other statutory schemes, the Legislature has established exceptions to the standards of review dictated by UAPA, to which Utah appellate courts have adhered. *See, e.g.*, Utah Code Ann. § 59–1–610(1)(a) (2000); *Schmidt v. Utah State Tax Comm'n*, 1999 UT 48, ¶ 6, 980 P.2d 690. Accordingly, this deference is proper in the arena of administrative law, and even more so when we are reviewing decisions of local government. Utah courts should not ignore the standards of review pronounced by the Utah Legislature.

¶ 44 On the other hand, the majority here relies on the erroneous distinction made by the majority in *Harmon* between a municipality's legislative and administrative land use decisions. This reliance on *Harmon* remains erroneous because vertical stare decisis commands that we follow the supreme court's clear statement in *Springville* of the proper standard of review. The *Harmon* distinction between legislative and administrative land use decisions was not made in *Springville*. The *Harmon* majority acknowledged this fact, noting that the supreme court did not say it was abandoning the distinction. *See Harmon*, 2000 UT App 031 at ¶ 19, 997 P.2d 321. Thus, the *Harmon* majority interpreted the supreme court's *silence* in *Springville* as a command to preserve the distinction between legislative and administrative land use decisions. This approach is in error. *Cf.* Black's Law Dictionary 1414 (7th ed.1999) (defining stare decisis with " 'Lord Halsbury's assertion that a case is only authority for what it actually decides.' " (citation omitted)).

¶ 45 Further, the majority opinion also tries to diminish the supreme court's clear statement in *Springville* of the proper standard of review. The opinion asserts that in *Springville* the supreme court "*merely stated* that a municipal's land use decisions ... are arbitrary and capricious when not supported by substantial evidence." (Emphasis added.) However, the supreme court's statement was not merely a tangential reference to policy considerations, but rather was "the supreme court's 'clear[ ] command' " that the substantial evidence standard of review should apply to all municipal land use decisions. *Harmon*, 2000 UT App 031 at ¶ 40, 997 P.2d 321 (Jackson, J., dissenting) (citation omitted).

¶ 46 In sum, any duty horizontal stare decisis imposes on us to follow *Harmon* is trumped by our duty to obey the supreme court's clear command in *Springville*. Moreover, our courts traditionally give great deference to mandatory standards of review established by the Legislature. Accordingly, we should apply the substantial evidence standard of review to this case.

## CONCLUSION

¶ 47 I believe we should have certified this case to the supreme court to consider the significant issue of which standard of review to apply to municipal land use decisions. Further, I would hold that the arbitrary and capricious standard of section 10–9–1001(3)(b) requires us to apply a substantial evidence standard of review. Thus, I respectfully dissent from the majority opinion.